## A. J. JAMISON *v.* W. B. MOON.

1. BILL OF EXCEPTIONS—PRACTICE IN SUPREME COURT.—An order of court refusing a new trial, not appearing of record in the minutes of the court, but only in the bill of exceptions, cannot be noticed in the appellate court. The office of the bill of exceptions is to introduce matters *in pais*. Process, pleadings, orders, judgments, etc., must appear by the record, and cannot be proved by bill of exceptions.

2. MEASURE OF DAMAGES IN ACTIONS EX CONTRACTU.—The general rule as to the measure of damages in actions *ex contractu*, is the actual damages naturally resulting from the breach of contract; if for the payment of money, the principal sum, with interest; if for non-delivery of property, its value at the time and place named for delivery, and interest; if for the price of property sold, with no price agreed on, then its market value and interest.

3. SAME—ACTIONS OF TORT—WAIVER OF TORT.—If the defendant sold the plaintiff's property without his consent, the plaintiff may waive the tort and sue for the price realized, or if there has been no sale, the amount of recovery will be *quantum valebat*. In actions of tort, the plaintiff is entitled to such compensation in damages, as will make full and complete redress for the wrong.

4. MEASURE OF DAMAGES.—The value of the property taken, with interest from the time of the taking, down to the trial, is deemed legal satisfaction, which refers only to the injury done to the property taken, and not to any collateral or consequential damages resulting to the owner from the trespass. Marshall, Ch. J., 6 Pet., 273.

5. EXEMPLARY DAMAGES.—When trespass is committed with high hand, without color of right, wantonly, wickedly oppressive, evincing a heart moved by malice or revenge, the jury ought not to stop at the mere value of the property, but may also take into consideration the mortified sensibilities and reputation of the party, and the evil example of such conduct to the public at large. But where no fraud, malice or wilful wrong, either in the taking or detention, is made to appear, the measure of damages is the value at the time of taking or conversion, with interest to the time, of trial. Whitfield v. Whitfield, 40 Miss., 356. Friedlander v. Pugh, Slocum & Co. *Ante.*

6. LEGAL TENDER—GOLD AND SILVER—U. S. CURRENCY.—Under the legal tender act of Congress, the defendant has a right to satisfy defendant's demand in currency and the jury cannot legally find a verdict for gold.

Error to the circuit court of Chickasaw county. BRADFORD, J.

Plaintiff in error assigns the following errors :

1st. In giving the instructions to the jury, asked by the plaintiff in the court below.

2d. In refusing the instructions asked by defendant in the court below.

3d. In overruling motion by plaintiff in the court below for a new trial.

4th. The verdict was void, because it is for gold, and not for currency of United States.

*J. S. Morris*, for plaintiff in error.

1st. The court below certainly erred in holding that in an action of *assumpsit* the verdict of the jury should be for the highest value of the goods constituting the consideration of the demand, at any time from the date of the liability to that of the trial. And this is the undoubted effect of the rulings of the court upon this question, in giving and refusing instructions upon the measure of damages. See Sedg. on Measure of Damages (3d ed., 1858), p. 499, (marginal p. 472), *et seq.*

2d. And the court, with equal certainty, erred in disallowing the motion of plaintiff in the court below, for a new trial, because of the errors in giving and refusing the instructions asked by the parties, and, because the jury had found, not only " contrary to the evidence," but really in utter defiance and contempt of all the evidence in the case. For there was really no evidence even tending to show any liability of Jamison.

3d. A verdict for payment to be made in gold is void, because in violation of the acts of Congress making United States treasury notes a legal tender.

No counsel for defendant in error.

SIMRALL, J :

W. B. Moon brought *indebitatus assumpsit* against A. J.

Jamison, for the value of three bales of cotton. The errors impugn the decision of the circuit court in overruling a motion for new trial, and in granting instructions asked by the plaintiff, and in refusing an instruction prayed by the defendant, and in rendering a judgment for gold.

We cannot notice the assignment of error, because of overruling the motion for a new trial. The office of the bill of exception is to introduce matter *in pais* into the record. Such papers and proceedings in a cause as are " of the record," need not be embodied in a bill of exception, such as the pleadings, process, and the orders and judgment of the court. If these exist at all, they must appear by the record, and cannot be proved by bill of exception. The order of the court overruling the motion for a new trial, must have been entered on the minutes—the official record of the proceedings and acts of the court, and that alone can supply competent proof that such order was made.

The testimony is embraced in the bill of exceptions, and it is proper to look to it, for the purpose of testing the applicability of the instructions to the facts in evidence. It is complained that there is error in refusing the second instruction prayed for by the defendant; which affirms that if Jamison was not a trespasser, but received the cotton from Park, as his (Jamison's) cotton, and the jury should further believe that the cotton really belonged to Moon, the plaintiff, the measure of damages is the value of the cotton at the time of the reception, by Flynn, for Jamison.

The second charge for the plaintiff was to the effect that although Jamison may have got possession of the cotton in the first instance *bona fide*, yet if he detained it after knowledge of the plaintiff's claim, then he became liable for the highest market price from the time of such knowledge to the time of trial. The general rule as to the measure of recovery in actions *ex contractu*, is the actual damages naturally resulting from the breach of the contract; if for non-payment of money, the principal sum with interest; if for non-delivery of property, its value at the time and place named

for delivery; if for the price of property sold, and no price is agreed, then its market value, and interest in both cases. If the defendant has sold the plaintiff's property without his consent, the plaintiff may waive the tort and go for the price realized; or, if there has not been an actual sale, then the amount of recovery to be fixed by the principle of the *quantum valebat.*

Conceding that the rules which govern actions *ex delicto*, as to the measure of damages, apply in this case—and on that point we express no opinion, as none is invoked by counsel—the question is, on the facts in evidence, was the jury properly instructed? There is a diversity of opinion in the courts as to the measure of damages for the conversion, or for trespass done to personal property—some of them holding, as in New York and several of the New England states, that the jury are not confined to the value of the thing at the time of the taking, and interest on such value, to the time of trial, but they may take the highest market value at any time between the conversion and the trial. However the courts may have varied in the application of principles, they all agree that the aggrieved plaintiff is entitled to such compensation, in damages, as will make full and complete redress for the wrong. The divergence begins in the effort in the different phases of injuries to lay down a rule which will meet and provide for each special case. The general rule is thus stated by Marshall, C. J., in Conrad v. Pacific Insurance Co., 6 Peter's R., 273: "The value of the property taken, with interest from the time of taking, down to the trial. This is deemed legal satisfaction, which refers solely to injury done to the property taken, and not to any collateral or consequential damages resulting to the owner by the trespass." In an active commercial country, where dealing in the barter and sale of commodities and stocks is the business of large numbers of the community, the tendency would seem natural to give to the party wrongfully deprived of his property or stock, a compensation approximating the profits that might have been made out of it in

the market. What are proper damages, depends very much on the circumstances of the case. If the trespass is committed with a high hand, and without color of right, wantonly, rudely, oppressively, evincing a heart moved by malice or revenge, the jury ought not to stop at the point of the mere value of the property and interest, but may also take into account the mortified sensibilities and reputation of the party, and the evil example of such conduct to the public at large.

In Whitfield v. Whitfield, 40 Miss. R., 356–367, this subject was carefully considered and the authorities examined. The rule was declared to be, " where no fraud, malice, or oppression, or wilful wrong, either in the taking or detention, intervenes, the measure of damages is the value of the property at the time of the taking or conversion, or illegal detention, with interest thereon to the time of trial. Such were our views in Friedlander v. Pugh, Slocumb & Co.*

The testimony shows that both Jamison and Moon had bales of cotton on the same premises and under the same shelter; that Jamison sent a teamster to remove a part of his cotton, who took away three bales pointed out by one Park, as Jamison's cotton. The bales owned by Jamison had been repacked. Those belonging to Moon were in the old packages. There was testimony to the effect that the bales removed belonged to Jamison. There was also testimony to the contrary. It was the exclusive province of the jury to determine as to the conflict and credibility. But in any fair view of it, it is clear that Jamison dispatched the teamster to remove his cotton, and that if he took off Moon's cotton, it was a mistake, to say the most of it. Jamison might well hold on to the cotton as his property, under a claim fairly made, in view of the facts in evidence on this point, and such detention, would not put him in the attitude of a man who had done a wilful injury, and knowingly persisted in it, within the rule recognized in this court. His conduct was not characterized, by oppression, ill-will, or wanton-

*Supra,* p. 111.

ness; he seemed to have believed that he was dealing with his own, in the original taking, and in the doubt as to whether he or Moon was owner of the particular bales removed, is not obnoxious to the imputation of persisting in the wrong; there was error therefore, in the second instruction granted for the plaintiff. The true rule to be applied to the condition of the facts, is embodied in the second prayer for instructions by the defendant, so far as it went; it fell short however, of communicating to the jury, an important adjunct, to-wit: interest on the value of the cotton down to the trial. If there has been a wrongful taking, the redress would not be complete in any state of circumstances, unless the trespasser paid the value of the property, as of the time of taking, and interest to the time of trial.

The transactions out of which this suit originated, occurred after the passage of the legal tender act by Congress; and under the construction recently given to that act by the supreme court of the United States, the defendant could have made amends and satisfaction for the plaintiff's demand in currency.

It was error therefore, to render judgment on the verdict for gold. Judgment reversed, *venire facias* and new trial awarded.