THOMAS MURRAY v. MAGGIE MACE.

FILED JUNE 6, 1894.    No. 5339.

1. **Trespass by Officer in Execution of Writ:** LIABILITY OF PLAINTIFF. One who delivers to an officer a valid writ, without directions as to the manner of its service, will not be liable for torts committed by the latter while engaged in the execution thereof.

2. ———: ———. But one who, with a knowledge of the facts, advises an abuse of a process of court by an officer, such as a trespass against the person or property of another, or subsequently ratifies such unlawful act, will be deemed a wrong-doer from the beginning.

3. ———: ———: DAMAGES. Compensation for mental suffering of the injured party is a legitimate element of damage in actions for trespass to property where the unlawful act is inspired by fraud, malice, or like motives.

4. ———: ———: ———. But in cases where the wrong consists in the taking or destruction of personal property without fraud, malice, or other aggravating circumstances, the measure of damage is compensation for the plaintiff's loss, which is ordinarily the value of the property with such incidental damage as may be shown to be the natural and proximate result of the act charged.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*Slabaugh, Lane & Rush* and *Lake, Hamilton & Maxwell,* for plaintiff in error.

*John L. Carr* and *Frank A. Parker, contra.*

POST, J.

This is a petition in error from a judgment of the district court of Douglas county. The defendant in error, who was plaintiff below, filed in the district court the following petition:

"MAGGIE MACE, PLAINTIFF,
v.                                    } Petition.
THOMAS MURRAY, DEFENDANT.

"The plaintiff complains of the defendant for that on the 24th day of December, 1889, and at divers other days and times before the commencement of this suit, the defendant unlawfully and with force broke and entered a certain dwelling house of the plaintiff, situated on lot 2, block 145, in the city of Omaha, in Douglas county, Nebraska, and then and there made a great noise and disturbance therein, and staid and continued to make such noise and disturbance for two hours then next following, and then and there took and carried from said house all of the defendant's furniture and household utensils, consisting of four spring bedsteads, four mattresses, three commodes, three bedroom tables, three stoves, one lounge, ten chairs, three trunks, a large quantity of bedding, dishes, and other things, and forcibly and wantonly threw said furniture down a steep embankment into the public street and broke and injured said property, to the value of $75. By means of which said several premises said plaintiff was, during all the time aforesaid, greatly disturbed, the property of the plaintiff of the value of $75 was destroyed, and the plaintiff was

prevented from carrying on and transacting her lawful and necessary affairs and business, and the plaintiff became sick, ill, and disordered, and so continued for the space of one week, and the plaintiff suffered great humiliation, anguish, and distress of mind, and has continued to do so up to the present time, to her damage in the sum of $5,000.

"2. The plaintiff complains of the defendant for that on the 24th of December, 1889, the defendant unlawfully and with force broke and entered a certain dwelling house of the plaintiff situated on lot 2, block 145, in the city of Omaha, Douglas county, Nebraska, and then and there ejected and expelled the plaintiff and her family from the possession, use, and occupation, and has kept them so ejected until the present time, whereby the plaintiff, during all said time, was deprived of the benefit of said dwelling house, to her damage in the sum of $50.

"3. The plaintiff complains of the defendant for that on or about the 24th day of December, 1889, the said defendant seized and forcibly took and carried away the following described goods, chattels, and effects, the property of the plaintiff, to-wit, one white bed spread, four white sheets, one carpet, one bureau, one red carpet, one old axe, of the value of $25, and has converted the same to his own use, and kept plaintiff from the possession of said property until the present time, to the damage of the plaintiff in the sum of $25.

"The plaintiff therefore prays judgment against the defendant for the sum of $5,150 and costs of suit.

"MAGGIE MACE,
"Plaintiff."

The answer was a general denial.

The facts disclosed by the evidence are as follows: In the month of June, 1889, Mrs. Mace, the plaintiff below, leased and entered into possession of a house owned by Murray, the defendant below. On the 29th day of November following Murray recovered judgment in a pro-

ceeding for the forcible detention of said property before a justice of the peace for Douglas county, and an order for a writ of restitution. On the 2d and 10th days of December writs of restitution were issued, which were both returned without having been served. On the 24th day of December a third writ was issued and placed in the hands of one Small, a constable, for service. On the day last named said Small, armed with the writ of restitution, visited the premises in question for the purpose of placing Murray in possession, but Mrs. Mace locked the door and refused him permission to enter. About one hour later Murray and the constable visited the premises in the absence of Mrs. Mace, and entering the house through a back door proceeded to remove the property found therein, and which acts are the wrongs alleged in the foregoing petition.

It is argued, first, that Murray incurred no liability for his acts in the execution of the writ, for the reason that he was merely called upon to assist the officer, and that whatever was done by him in the premises was under the direction and in obedience to the command of the latter. The rule we regard as settled, that one who places in the hands of an officer a valid writ, without directions as to the manner of its service, will not be liable for torts committed by the latter while engaged in the execution thereof; but where he, with knowledge of the facts, advises an abuse of the process of the court, such as a trespass against the person or property of another, he will be regarded as a wrong-doer from the beginning. (*Taylor v. Ryan*, 15 Neb., 573; *Hyde v. Cooper*, 26 Vt., 552; Cooley, Torts, 129.) In this instance Murray was not satisfied apparently to trust the officer, but voluntarily assisted in the removal of the property, and now justifies their joint action on the ground that it was necessary and proper in the execution of the writ. He is, therefore, clearly within the rule above stated, provided there was an abuse of the process, a question which will now be considered.

The evidence of the plaintiff below tends to prove that Murray and the constable tore the carpets from the floor and stairs without removing the tacks, and that the window shades were torn down without removing the fixtures. It is shown, also, that there were two or three dishes broken, and that a few knives and forks, a breast pin, and four sheets were lost. It may also be inferred from the plaintiff's evidence that the property, when removed from the house, was deposited on the bare ground and thereby slightly soiled. This evidence was contradicted by the witnesses for the defendant below, but that issue appears to have been settled by the verdict of the jury in favor of the plaintiff, and with that finding we must be content in this proceeding. In the leading case of *Jenner v. Joliffe*, 9 Johns. [N. Y.], 384, the rule is thus stated: "And where the plaintiff, upon a process of attachment, causes an officer so to conduct himself as to misbehave in the execution of his office and produce the loss or destruction of goods in his custody, the party has his election either to sue the principal or the officer." So far as this branch of the case is concerned, we agree with the views expressed in the instructions of the district court.

The record presents for consideration a further question, the solution of which is attended with greater difficulty. It is disclosed by an examination of the petition, that the amount claimed for the destruction of property is $75, and for property lost and carried away $25. While the evidence tends to sustain the foregoing allegation with respect to damage by destruction of property, the highest estimate placed upon property lost is $12. It is apparent, therefore, from the verdict for $1,623.90, that it is based substantially upon the claim for "humiliation, anguish, and distress of mind." In this connection it should be observed that the proceeding for the forcible detention of the property is apparently regular and the writ of restitution in due form. Indeed, no claim was made at the trial

on the ground of a want of jurisdiction or abuse of process other than as above stated, viz., that the action of the defendant below was "unlawful and with force." It must be assumed, therefore, that the entry of the premises did not of itself amount to a trespass, and that all acts for which Murray is liable relate to the manner of the execution of the writ. Another fact which calls for notice is, that Mrs. Mace was not present at the time her property was removed. Her version of what transpired on that occasion best appears from her own language. In answer to the question, "What conversation, if any, did you have that day with Mr. Murray?" she said: "I had in the morning he came in there. I was in the front part of the house, and I thought I heard some one in the kitchen, and I wanted to know what was there, and he said that he was going to put me out this morning, and I said, 'No, Mr. Murray,' I said, 'as soon as I get money I would pay you,' and he said, no, he was going to put me right out, he said, and he commenced going around there and swearing, and I told him not to swear in the house, and he said he would, it was his own house, and he would; and he went away and he came back again in about twenty minutes. I saw him come around there with another man and I locked the door. I would not let him in, and he kept knocking and knocking and I never opened it; and I had a roomer upstairs, and I went and called him and told him to come downstairs, because Mr. Murray was going to put me out, and he said, 'O, he wouldn't put me out,' and I said, ' yes, he said he will,' and then he came downstairs and staid a while, and I never opened the door to let him in. I sent the children in-doors, as I was looking for them, and they came in, and they would not stay in the house. They commenced to cry, and they said they wouldn't stay in, so they went out, and I locked the door again, and I dressed myself after awhile and went up town, and I went up town and staid about half an hour,

and when I came to Sixteenth and Harney I seen all my things out on the street." Other witnesses testified that she cried on discovering her property on the sidewalk and appeared to be greatly distressed thereat; but it does not appear that she suffered insult or was subjected to personal indignity of any kind. The question is therefore fairly presented, whether the measure of damage in an action for a simple trespass to personal property includes injury to the feelings of the complaining party. The distinction must not be overlooked between cases like this, where the act charged is simply unlawful in the sense that it is a violation of the right of property, and those cases where the unlawful act was inspired by fraud, malice, or like motives. As to those last named, the question is free from doubt. In all such cases mental suffering is a legitimate element of damage. (*Day v. Woodworth*, 13 How. [U. S.], 363; *Cutler v. Smith*, 57 Ill., 252; *Jamison v. Moon*, 43 Miss., 598; *Brown v. Allen*, 35 Ia., 306; *Merrills v. Tariff Mfg. Co.*, 10 Conn., 384.) But in cases of trespass, where personal property is taken and carried away, in the absence of fraud, malice, or other aggravating circumstances, the measure of damage is compensation to the plaintiff for his loss, which is, as a rule, the value of the property with such incidental damage as is shown to be the natural and proximate result the wrong charged. (*Brown v. Allen, supra; Wooley v. Carter*, 7 N. J. Law, 85; *Hopple v. Higbee*, 23 N. J. Law, 342; *Cushing v. Longfellow*, 26 Me., 306; *Sims v. Glazener*, 14 Ala., 695; *Woodham v. Gelston*, 1 Johns. [N. Y.], 134; *Felton v. Fuller*, 35 N. H., 226; *Coolidge v. Choate*, 11 Met. [Mass.], 79; *Meagher v. Driscoll*, 99 Mass., 281. It is believed that no precedent can be found in the reports for the allowance of damage on account of injury to feelings in actions of this character. It is certain that we have been referred to no such case, nor have we found any during a careful examination of the question. It follows that the damage awarded is excessive, and that a new

trial should have been allowed on that ground; but, as we have seen, the court properly permitted a recovery for the damage actually sustained, to-wit, for property destroyed, $75, and property carried away, $12. The defendant in error may therefore elect to remit all but $87 of the damage allowed, with interest, within thirty days, in which case the judgment will be affirmed; otherwise it will stand reversed.

JUDGMENT ACCORDINGLY.