EVELYN A. O'CONNOR, APPELLEE, V. DAVID A. KAUFMAN
AND VIRGINIA L. KAUFMAN, APPELLANTS.

616 N.W.2d 301

Filed August 11, 2000.   No. S-99-489.

John P. Weis, of Sorensen & Zimmerman, P.C., for appellants.

Maren Lynn Chaloupka, of The Van Steenberg Firm, and James Duffy O'Connor, of Maslon, Edelman, Borman & Brand, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## INTRODUCTION

This is the third appearance in this court of this action for injunctive relief and damages. Evelyn A. O'Connor filed suit in the district court for Scotts Bluff County against her rural neighbors, David A. Kaufman and Virginia L. Kaufman (the Kaufmans), claiming that she had an implied easement, arising from former use, for the maintenance of a well, pump, and pipeline located on the Kaufmans' property. The Kaufmans had capped the well and removed the pump in 1991. The district court granted O'Connor's motion for summary judgment on the implied easement issue, ordered the Kaufmans to reinstate the use of the well, and enjoined them from interfering with O'Connor's use of the easement. After a trial on damages, O'Connor was awarded $16,762.73 and the Kaufmans' subsequent motion for a new trial was overruled. The Kaufmans appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of this case have been adequately detailed in three previous appellate decisions and need not all be repeated here. See, *O'Connor v. Kaufman*, 250 Neb. 419, 550 N.W.2d 902

(1996) (*O'Connor I*); *O'Connor v. Kaufman*, 6 Neb. App. 382, 574 N.W.2d 513 (1998) (*O'Connor II*), *affirmed* 255 Neb. 120, 582 N.W.2d 350 (*O'Connor III*). We will set forth the facts pertinent to this appeal and refer the interested reader to the prior appellate decisions for a more complete factual background, if necessary.

For ease of reference, we set forth below a sketch of the parcels of land involved. The sketch is for illustrative purposes only and does not purport to be drawn to scale. *O'Connor I*. The property at issue is approximately 460 acres of farmland located southeast of Lyman, Nebraska. O'Connor is the owner of the parcels marked A, B, and C. The Kaufmans are the owners of parcel D. Parcels A and D adjoin each other, divided only by a country road.

Until January 2, 1965, William Ledingham, Jr., owned and farmed all the land (parcels A, B, C, and D). William Ledingham maintained a home on parcel A, which is now owned by O'Connor. The well, pump, and pipeline in question were built by William Ledingham more than 45 years ago on parcel D in order to furnish domestic water to his home on parcel A. The pipeline running from parcel D to parcel A is underground. *Id.*

On January 2, 1965, William Ledingham conveyed all the land to Ledingham, Inc. William Ledingham passed away on January 29, 1975, and Ledingham, Inc., conveyed the land to William Ledingham's two children by corporate dissolution deeds. Parcels A and B were conveyed to William Ledingham's son, Jerry Ledingham, and parcels C and D were conveyed to his daughter, Sandra Carnesecca. Carnesecca subsequently con-

veyed parcel C to her brother, Jerry Ledingham, in an effort to equalize their interests in William Ledingham's estate.

Jerry Ledingham passed away on January 31, 1985, and parcels A, B, and C were conveyed by personal representative deed to O'Connor, his wife. Title of parcel D went from Carnesecca to Renteria Brothers Land and Livestock, Inc., on February 7, 1978; then passed to Arthur and Dora Renteria on January 16, 1979; then to Arthur Renteria on January 26, 1979; then to Renteria Farms, Inc., on August 20, 1981; and finally, to the Kaufmans by sheriff's deed on November 8, 1989. No express easement for use of the well, pump, and pipeline was ever reserved throughout the chain of title to parcel D. Prior to purchasing the land, the Kaufmans searched the title record and visually inspected the land without discovering the alleged easement.

From 1978 to 1990, the house on parcel A shared the water from the well with a small house, occupied by Victor Roldan, and other outbuildings located on parcel D. In October 1985, O'Connor rented the house located on parcel A to Bill Derr. In the lease, Derr agreed to pay a fee for pumping water onto the premises from the well on parcel D. When the Kaufmans acquired the property in November 1989, Derr agreed to pay them $25 per month for use of water from the well. This agreement continued until Derr moved out of the house in July 1991.

In September 1991, while no one was living in the house on parcel A, the Kaufmans removed the well, pump, and pipeline on parcel D and began farming the land where these items were formerly located. After the well was removed, O'Connor hired Don Rider to drill a well on parcel A in order to supply water to the house on that land. Since the well was drilled, the house again became habitable.

O'Connor's original petition alleged only a prescriptive right to the use of water from the well on parcel D. The district court granted O'Connor leave to amend her petition due to an error in the legal description of her property. In her amended petition, O'Connor added a claim based upon the existence of an implied easement from former use. The amended petition stated in pertinent part:

"That the lands owned by plaintiff and defendants adjoin each other and that prior to plaintiff or defendants acquiring title to their respective land all of said land was owned by William Ledingham who farmed all of the land owned, maintained a home on the land owned by the plaintiff; and, installed an irrigation well on the property owned by the defendants together with a pipeline running therefrom for the purpose of providing domestic water to his home and adjoining facilities on the land owned by the plaintiff. That the reason for said installation was that the land owned by the plaintiff was incapable of supporting a water well sufficient to provide water for domestic purposes. Said well, pump and pipeline was installed more than 40 years ago and has remained in the same location for continuous furnishing of domestic water to plaintiff's land."

*O'Connor I*, 250 Neb. at 423, 550 N.W.2d at 905.

The Kaufmans answered by claiming that the elements required to support the creation of an implied easement were not satisfied. In *O'Connor I*, we concluded that in order to determine whether an implied easement from former use was created, we must look to the time of the conveyance subdividing the property. Under the facts of this action, we determined that January 29, 1975, is the appropriate time, because that is when Ledingham, Inc., conveyed the parcels at issue to Jerry Ledingham and Carnesecca, thus marking the first time that parcels A (O'Connor's property) and D (the Kaufmans' property) were not under common ownership. We noted that the affidavits submitted at the summary judgment hearing

discussed events that transpired in the late 1980's and early 1990's, focusing predominantly upon the adequacy of the well dug in 1991 on parcel A to supply water to the house on that land. None of the affidavits submitted by either O'Connor or the Kaufmans referred to the alleged easement as of January 29, 1975, when parcels A and D were first divided.

*Id.* at 425, 550 N.W.2d at 906. We determined that the submitted affidavits were not relevant because they did not relate back to the appropriate timeframe. We looked only to the amended

petition and answer and determined that a genuine issue of material fact existed regarding the creation of an implied easement and reversed the order granting the motion for summary judgment favoring the Kaufmans. *Id.*

After our decision in *O'Connor I*, both parties amended their respective pleadings with the district court's permission. O'Connor then moved for partial summary judgment on May 12, 1997. At the hearing on the motion, several affidavits were received into evidence, which clearly stated the irrigation well on parcel D had been used since the 1950's to supply the domestic water to parcel A until the well was capped and the pump removed in 1991. O'Connor averred that after the well was capped, she had difficulty finding tenants and incurred expenses while trying to find another source of water for parcel A. She stated that the water that has been produced by these attempts is unsatisfactory for drinking. Stanley Welsch, O'Connor's tenant since April 1993, stated that the current well on parcel A supplies water that is odorous and that flows at a rate of only 2 to 3 gallons per minute, which requires him and his family to ration its other water needs. In his supplemental affidavit, Welsch stated that the water is drinkable, but that his family prefers bottled water.

Carnesecca averred that on January 29, 1975, she conveyed land to her brother Jerry Ledingham. She and Jerry Ledingham erroneously believed that the well on parcel D was located upon property she was conveying to him and therefore inserted language in the contract that provided for the continued use of the domestic water from the well for the land that she was conveying to him. Carnesecca stated that there had never been a house or yard on this land that had received its domestic water from the well on parcel D. In her supplemental affidavit, Carnesecca stated that when William Ledingham purchased parcel A in 1942, a well on parcel A supplied the water for the house. In 1949, William Ledingham dug the well on parcel D, which was used to supply water to parcel A. The original well on parcel A was used to water livestock, and after William Ledingham quit the livestock business, that well was capped. She stated that there were no problems with the original well on parcel A before it was capped and prior to its change in use; the original well

provided domestic water for the home on parcel A. Carnesecca also averred that during his lifetime, William Ledingham never indicated any intention to create or reserve an easement for the use of the water from the well on parcel D to the family home on parcel A. Carnesecca further explained that the contractual provision reflects the agreement she made with Jerry Ledingham for the use of the water from the well on parcel D, wherein she agreed to allow him to continue to use the water from the well, provided he maintain the pump and share in the cost of the electricity to run the pump.

David Kaufman stated in his affidavit that he had no recorded notice of any easement. He said that he entered into an agreement with O'Connor's tenant Derr, in which Derr could use the water from his well for a fee. Derr claimed in his affidavit that he entered into this agreement because he believed that David Kaufman was the true owner of the well and because O'Connor never claimed any right in the well. Rider, who dug the well on parcel A in 1991, stated that the well was adequate to supply water for the domestic use of parcel A.

On July 8, 1997, the district court sustained O'Connor's motion for partial summary judgment and reserved for trial the remaining issue of damages. In its order sustaining O'Connor's motion, the district court determined that an implied easement from prior use was created and that the abandonment defense was without merit. The district court further ordered the Kaufmans to reinstate use of the well, pump, and pipeline as existed prior to their removal and permanently enjoined the Kaufmans from interfering with O'Connor's use of the easement.

The Kaufmans appealed, but their appeal was dismissed for lack of a final, appealable order. See *O'Connor III* (affirming Nebraska Court of Appeals' decision in *O'Connor II*, holding that order granting O'Connor's motion for partial summary judgment as to permanent injunction and easement, but retaining issue of damages for trial, is not final, appealable order). A trial on the issue of damages was subsequently held wherein the district court awarded O'Connor damages in the amount of $16,762.73, including (1) $5,811.73 for well drilling on parcel A, (2) $2,950 for lost rental income from September 1991 until

the Welsches moved to O'Connor's property in April 1993, (3) $8,000 to remove and fill the swimming pool, and (4) $1 for O'Connor's loss of the yard on parcel A. The Kaufmans' motion for new trial was overruled, and this appeal followed. We moved this case to our docket pursuant to our authority to regulate the caseloads of the appellate courts of this state. Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

### ASSIGNMENTS OF ERROR

The Kaufmans allege that the district court erred in (1) finding the existence of an implied easement from former use for use of water from the irrigation well located upon their property; (2) finding that O'Connor is the owner of an implied easement from former use for use of water from the irrigation well located upon their property; (3) failing to find that the implied easement, if any, had been abandoned by the actions of O'Connor; (4) enjoining the Kaufmans to reinstate the irrigation well located upon their property; (5) permanently enjoining the Kaufmans from interfering with O'Connor's alleged easement; (6) finding that the Kaufmans had committed trespass against O'Connor's alleged easement; (7) failing to dissolve the injunction against the Kaufmans for reinstatement of the irrigation well located upon their property; (8) awarding O'Connor monetary damages for the cost of drilling a new well; (9) awarding O'Connor monetary damages for the loss of rental income; and (10) awarding O'Connor monetary damages for the cost of filling in the swimming pool on her property.

### STANDARD OF REVIEW

█ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Iwanski v. Gomes*, 259 Neb. 632, 611 N.W.2d 607 (2000); *Turner v. Fehrs Neb. Tractor & Equip.*, 259 Neb. 313, 609 N.W.2d 652 (2000).

█ In a bench trial of a law action, a trial court's findings have the effect of a jury verdict and will not be set aside on appeal unless clearly erroneous. *Schwarz v. Platte Valley Exterminating*, 258 Neb. 841, 606 N.W.2d 85 (2000).

■ A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Id.*; *Streeks v. Diamond Hill Farms*, 258 Neb. 581, 605 N.W.2d 110 (2000).

## ANALYSIS

### SUMMARY JUDGMENT ON IMPLIED EASEMENT

The district court determined that an implied easement existed and that O'Connor had not abandoned this easement. The Kaufmans dispute this determination in their first three assigned errors.

■ An easement by implication from former use arises only where (1) the use giving rise to the easement was in existence at the time of the conveyance subdividing the property, (2) the use has been so long continued and so obvious as to show that it was meant to be permanent, and (3) the easement is necessary for the proper and reasonable enjoyment of the dominant tract. *O'Connor I*; *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996). As explained in *O'Connor I*, in order to determine whether an implied easement from former use was created, we look to the time of the conveyance subdividing the property. The relevant time is therefore January 29, 1975, when Ledingham, Inc., subdivided the property at issue.

In the instant case, both O'Connor and Carnesecca averred that William Ledingham and Jerry Ledingham used the well on parcel D to supply water for parcel A in 1975, when Ledingham, Inc., subdivided these parcels. William Ledingham's longtime neighbor, Carl Stratton, similarly stated in his affidavit that the well on parcel D supplied water to parcel A up to and through 1975. This evidence demonstrates that there is no dispute and thus no question of fact that the use giving rise to this easement was in existence in 1975, which is the time of the conveyance subdividing the property.

Regarding the second element, the Kaufmans contend that questions of fact exist as to the intent of William Ledingham to create or reserve an implied easement. They point to Carnesecca's supplemental affidavit in which she discusses the use of the original well on parcel A, which provided the domestic water supply on parcel A until the well on parcel D was

drilled. The well on parcel A continued to be an alternative water supply for parcel A. Carnesecca also avers that William Ledingham never indicated any intention to create an easement.

Carnesecca's affidavit, however, does not create a question of fact regarding William Ledingham's intent. It does not necessarily follow that because an alternative water supply existed on parcel A and William Ledingham never verbally expressed his intent, he had no intent to create an easement for use of water from the well on parcel D. His continuous use for over 25 years, from the time the well was drilled in 1949 up to 1975 when the property was divided, clearly expresses his intent to create a permanent easement. In essence, William Ledingham's actions speak louder than Carnesecca's words. The use of the easement has been so long continued and so obvious as to show that it was meant to be permanent, thus satisfying the second element.

The Kaufmans argue that the use of water from the well on parcel D was a mere convenience and not reasonably necessary for the enjoyment of parcel A. They assert that because there was an alternative source of water on parcel A, which met the original domestic needs of the homestead, in addition to the fact that this well on parcel A was capped while in good working order create a question of fact as to the necessity of using the water from the well on parcel D.

The Kaufmans, although they couch their argument in "reasonable necessity" language, are actually arguing that the use of the well was not strictly necessary. The degree of necessity required to prove the existence of an implied easement from former use is "reasonable necessity." *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996). The rule of strict necessity is applied to easements that arise by necessity and implied reservations, but not to easements from former use. *Id.*

"Reasonable necessity" means that the easement is " 'necessary for the proper and reasonable enjoyment of the dominant tract.' " (Emphasis omitted.) *Id.* at 411, 550 N.W.2d at 898, quoting *Hengen v. Hengen*, 211 Neb. 276, 318 N.W.2d 269 (1982). In *Hillary Corp.*, we also noted that "the degree of necessity is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it

existed when the severance was made, and that it should not be absolutely necessary for the enjoyment of the estate granted." (Emphasis omitted.) 250 Neb. at 411, 550 N.W.2d at 897-98, quoting *Christensen v. Luehrs*, 133 Neb. 50, 273 N.W. 839 (1937). The Kaufmans concede that the reason William Ledingham diverted water from the well on parcel D to parcel A was because that well produced more water. Because "reasonable necessity" and not strict necessity need be established, there is no question of fact that the use of the well on parcel D was reasonably necessary for the convenient and comfortable enjoyment of parcel A.

The Kaufmans also argue that if an implied easement existed, this easement was abandoned through subsequent actions of the landowners. Specifically, the Kaufmans point to the contractual language of the 1975 Carnesecca-Ledingham contract in which Jerry Ledingham agreed that he would continue to have the right to use the well on parcel D in consideration for maintaining the pump and sharing the operating costs with Carnesecca. The Kaufmans further assert as indicative of this purported abandonment that the deed record does not contain an expressly reserved easement, that O'Connor's tenant Derr paid Kaufman a fee for using the well on parcel D, and that O'Connor proposed to the Kaufmans that she lease or buy the property so as to secure her use of the water.

An easement may be abandoned by unequivocal acts showing a clear intention to abandon and terminate the right, or it may be done by acts in pais without deed or other writing. *Mueller v. Bohannon*, 256 Neb. 286, 589 N.W.2d 852 (1999). The intention to abandon is the material question, and it may be proved by an infinite variety of acts. It is a question of fact to be ascertained from all the circumstances of the case. See *Hillary Corp. v. United States Cold Storage, supra.*

The Carnesecca-Ledingham contractual provision, the absence of an expressly reserved easement, Derr's payment of a use fee to the Kaufmans, and O'Connor's efforts to secure her use of the water are, however, insufficient to constitute unequivocal acts indicating an intent to abandon. The contractual provision, Derr's use fee, and O'Connor's efforts reveal an intent to preserve a right in the property through legal, rather than equi-

table channels. Additionally, O'Connor offered to buy the land surrounding the well on parcel D only after the Kaufmans had capped the well. As the district court noted, the use of the easement did not stop because O'Connor willed it, but, rather, because the Kaufmans capped the well and shut off her domestic water supply. The absence of an expressly reserved easement does not amount to abandonment, because an implied easement is, by definition, not express.

We determine that there are no questions of fact in the record before us which preclude summary judgment. We therefore affirm the order of the district court granting summary judgment in favor of O'Connor on the implied easement from former use theory.

INJUNCTIVE RELIEF

The Kaufmans' fourth through seventh assigned errors involve the propriety of the injunctive relief. They argue that the district court erred in granting a permanent injunction because O'Connor was not faced with an irreparable harm and that summary judgment provided an adequate remedy at law. Summary judgment was an adequate remedy, according to the Kaufmans, because the district court's order awarded O'Connor an implied easement for the use of the water, and if the Kaufmans interfered with this easement, O'Connor would be entitled to bring a trespass action. They maintain that a trespass action constitutes an adequate remedy at law.

The term "adequate remedy at law" refers to a remedy which is plain and complete, and as practical and efficient to the ends of justice as is the equitable remedy. *Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000). A trespass action would entitle O'Connor to recover money damages. See, e.g, *George Rose Sodding & Grading Co., Inc. v. City of Omaha*, 187 Neb. 683, 193 N.W.2d 556 (1972); *Murray v. Mace*, 41 Neb. 60, 59 N.W. 387 (1894). However, a trespass action would not entitle O'Connor to prevent the Kaufmans from interfering with her easement, which injunctive relief provides. A trespass action is thus not an adequate remedy at law under the circumstances of this case, and we conclude that the district court did not err in granting injunctive relief to O'Connor.

### ASSESSMENT OF DAMAGES

█ The Kaufmans' final three assigned errors involve the damages awarded to O'Connor. They assert generally that the award of damages is not supported by the evidence. The Kaufmans contend that O'Connor's inaction bars equitable relief, that she failed to mitigate her damages with respect to the lost rental income, and that the cost of removing and filling in O'Connor's swimming pool was speculative and was not the result of their actions. In analyzing these errors, we note that the amount of damages to be awarded is a determination solely for the fact finder, and its action in this respect will not be disturbed on appeal if it is supported by the evidence and bears a reasonable relationship to the elements of the damages proved. See, *Phipps v. Skyview Farms*, 259 Neb. 492, 610 N.W.2d 723 (2000); *Holden v. Wal-Mart Stores*, 259 Neb. 78, 608 N.W.2d 187 (2000).

The Kaufmans first argue that the district court erred in awarding O'Connor damages for drilling a new well. They claim that such an award penalizes them for O'Connor's lack of diligence in seeking remedial relief and her failure to mitigate her damages. The Kaufmans contend that since they capped the well in September 1991, O'Connor should have immediately sought a temporary injunction, which would have made drilling a new well unnecessary.

█ It is the Kaufmans' burden to show that O'Connor failed to mitigate her damages. See *Streeks v. Diamond Hill Farms*, 258 Neb. 581, 605 N.W.2d 110 (2000). They have not sustained this burden. On the contrary, O'Connor's testimony reveals that she was diligent in seeking a remedy. She testified that she contacted David Kaufman after she learned that the well was capped and attempted to negotiate with him. She stated that Kaufman expressed an interest in working on the water issue. O'Connor testified that she did not begin to look for a new well immediately because she did not think that there would be a good source for a well on her property and that she was hopeful that she and the Kaufmans could resolve the problem. The record reveals that she diligently pursued a resolution, and as such, the Kaufmans' argument that O'Connor failed to mitigate her damages is without merit.

█ The Kaufmans also claim that if they are ordered to reinstate their irrigation well on parcel D and O'Connor recovers the cost of drilling a new well on parcel A, O'Connor receives a windfall of a new well for free. The principle underlying allowance of damages is to place the injured party in the same position, so far as money can do it, as he or she would have been had there been no injury or breach of duty, that is, to compensate for the injury actually sustained. See *Keitges v. VanDermeulen*, 240 Neb. 580, 483 N.W.2d 137 (1992). With this principle in mind, it is clear that O'Connor has not recovered doubly for her losses. The Kaufmans' trespass on O'Connor's implied easement resulted in her incurring expenses to drill a new well on her property. In order to place her in the same position had there been no trespass, the district court properly awarded her these drilling expenses.

The Kaufmans also argue that O'Connor failed to mitigate her loss of rental income and thus should not be awarded those damages. They point to O'Connor's testimony that she did not advertise her home for rent and instead relied on the efforts of Howard Spath to locate a tenant; however, Spath testified that he did not remember her asking him to help her find a tenant. These assertions, nonetheless, are insufficient to meet the Kaufmans' burden of proof on the mitigation issue. Rather, the record indicates that O'Connor did mitigate her damages. She testified that after Derr moved out and before the Welsches moved in, she worked out a unique arrangement with a new tenant, Robert Gridley, who agreed to stay in the home without water for a significantly reduced rent. This arrangement demonstrates that O'Connor did mitigate her damages; O'Connor's losses could have been greater had she refused to accept the arrangement with Gridley. The Kaufmans' contention that O'Connor failed to mitigate her damages is therefore without merit.

█ The Kaufmans also assert that damages involving the swimming pool should not have been awarded because the cost of filling in the pool was too speculative and not the result of their actions. Damages need not be proved with mathematical certainty, but the evidence must be sufficient to enable the trier of fact to estimate with a reasonable degree of certainty and exactness the actual damages. *Wells Fargo Alarm Serv. v. Nox-*

*Crete Chem.*, 229 Neb. 43, 424 N.W.2d 885 (1988). See, also, *Gagne v. Severa*, 259 Neb. 884, 612 N.W.2d 500 (2000); *Lis v. Moser Well Drilling & Serv.*, 221 Neb. 349, 377 N.W.2d 98 (1985). In the instant case, O'Connor testified that liability concerns motivated her to fill in her pool, with an ultimate expenditure of "several thousand dollars . . . about eight perhaps." O'Connor could not recall, however, whom she hired to fill the pool, nor was any bill reflecting this expense offered or received into evidence. Further, she stated on cross-examination that she was not sure of the $8,000 figure.

In awarding damages, the fact finder is not required to accept a party's evidence at face value, even though that evidence is not contradicted by evidence adduced by the party against whom the judgment is to be entered. *Seeber v. Howlette*, 255 Neb. 561, 586 N.W.2d 445 (1998); *Bristol v. Rasmussen*, 249 Neb. 854, 547 N.W.2d 120 (1996). The district court, therefore, was not bound to accept O'Connor's estimation of damages, even though it was not contradicted by the Kaufmans' evidence. Moreover, the record before us reveals that O'Connor was awarded $8,000 for pool expenses based only upon her estimation and speculation that $8,000 was the actual payment in the instant case. O'Connor's own testimony, especially the fact that she could not remember who filled in the pool and the fact that she did not offer proof of payment as evidence of the expense, renders this speculative and conjectural evidence insufficient, as a matter of law, to support the $8,000 portion of the money judgment. Therefore, we conclude that the district court did err in awarding O'Connor damages in the sum of $8,000 for the cost of filling in her swimming pool. In all other respects, the district court's award of damages to O'Connor is supported by sufficient evidence.

## CONCLUSION

For the foregoing reasons, we determine that the district court did not err in entering summary judgment in favor of O'Connor and against the Kaufmans on the theory of implied easement arising from former use, and in granting injunctive relief to O'Connor. We also conclude that, except for the $8,000 cost of filling in the swimming pool, the damages awarded to O'Connor

are supported by the evidence and bear a reasonable relationship to the elements of the damages proved. We, therefore, reverse that portion of the district court's judgment awarding O'Connor damages in the total sum of $16,762.73, and remand this cause to the district court with directions to enter judgment in favor of O'Connor and against the Kaufmans in the total sum of $8,762.73. In all other respects, the judgment of the district court is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.