Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/21/2016 09:09 AM CDT

MARVIN ARNOLD, APPELLEE, V.
HARVEY ARNOLD, APPELLANT.
___ N.W.2d ___

Filed June 21, 2016.    No. A-15-243.

1. **Easements: Equity.** An adjudication of rights with respect to an easement is an equitable action.
2. **Easements: Real Estate: Conveyances.** An easement by implication from former use arises only where (1) the use giving rise to the easement was in existence at the time of the conveyance subdividing the property, (2) the use has been so long continued and so obvious as to show that it was meant to be permanent, and (3) the easement is necessary for the proper and reasonable enjoyment of the dominant tract.
3. **Easements: Proof.** The degree of necessity required to prove the existence of an implied easement from former use is reasonable necessity.
4. **Easements: Words and Phrases.** Reasonable necessity means that the easement is necessary for the proper and reasonable enjoyment of the dominant tract as it existed when the severance was made.
5. **Easements.** Every easement carries with it by implication the right of doing whatever is reasonably necessary for the full enjoyment of the easement itself, including the right of access to make repairs and enter upon the servient estate for this purpose.
6. ____. An owner of a dominant tract may not inflict any unnecessary injury to the servient tract in making easement repairs.

Appeal from the District Court for Frontier County: DONALD E. ROWLANDS, Judge. Affirmed.

Larry R. Baumann and Angela R. Shute, of Kelley, Scritsmier & Byrne, P.C., for appellant.

Sally A. Rasmussen and Patricia L. Vannoy, of Mattson Ricketts Law Firm, for appellee.

Moore, Chief Judge, and Inbody and Riedmann, Judges.

Riedmann, Judge.

## INTRODUCTION

Harvey Arnold appeals from an order of the district court for Frontier County, Nebraska, determining the boundaries of easements across his land for access to and repair of an irrigation well and underground pipeline. Following our de novo review, we find no error in the determinations of the district court and, accordingly, affirm its judgment.

## BACKGROUND

Harvey and Marvin Arnold are brothers who own and farm adjacent parcels of land in Section 23, Township 6 North, Range 26 West of the 6th P.M., Frontier County, Nebraska. Harvey owns the southeast quarter of Section 23 and Marvin owns the west half of Section 23. Harvey and Marvin have farmed their respective tracts of land under lease agreements with their father, Dorrance Arnold, since the 1970's, and they received ownership of their parcels from Dorrance after he died in 2005.

An irrigation well that serves Marvin's land lies on Harvey's land 74 feet east of the boundary line that divides the east and west halves of Section 23. From the well, an underground pipe carries water at a slight northwestern angle until it reaches the northwest corner of Harvey's property and there crosses onto Marvin's land. Dorrance drilled the well in 1971, and it has been used exclusively to irrigate crops on the west half of Section 23 since 1978.

In addition to transferring ownership of the farmland to the brothers, Dorrance's will reserved for Marvin's tract an easement against Harvey's land "for the purposes of maintaining and replacing the irrigation well located on [the southeast quarter of Section 23] which provides irrigation water for [the west half of Section 23]."

Harvey and Marvin have a strained relationship, and they do not communicate directly with each other. In 2011, the

brothers constructed a boundary fence between their tracts. Each brother constructed a portion of the fence. In particular, Harvey constructed a fence on the western border of his land and left an opening directly west of the well. Marvin constructed a portion of the fence along the northern boundary and installed two gates at the northwest corner of Harvey's land through which he could access the pipeline and well. Marvin testified that it had been his longstanding practice to access the well by entering Harvey's land at its northwest corner; continuing down the boundary line on Harvey's side of the land, roughly above the route taken by the underground pipe; and then angling from the fence line to the well. Marvin testified that he and Harvey had previously agreed on this route when the land was still owned by Dorrance and that over the years, he had worked to raise the dirt on this path to prevent it from flooding.

In 2012, Marvin found that Harvey had padlocked the gate in the northwest corner of Harvey's land and planted corn over the path Marvin normally used to drive to the well. Until 2012, Harvey had not planted corn in this area. Marvin removed a pin from the hinge of the gate to open it while it was locked and continued driving his usual route. In June 2013, Marvin filed this action seeking an injunction, a declaratory judgment finding that the easement in Dorrance's will included the right to access and maintain the pipeline, and in the alternative, an easement by implication of former use for access to and maintenance of the pipeline.

The parties submitted conflicting evidence at trial as to whether it would be feasible for Marvin to access the well by driving down his side of the fence line and then turning west onto Harvey's property. The parties disputed whether the gap in the fence that Harvey constructed directly west of the well would be appropriate for large equipment. Marvin argued that flooding and topographical features would prevent his fuel truck from taking Harvey's proposed route. Marvin also testified that he is able to check the pipeline for leaks by utilizing

his current route. He also introduced evidence that in order to repair or replace the pipeline, he would need an easement extending to 20 feet on each side of the pipeline in order to accommodate trenching machinery and dirt work. In addition to the testimony and exhibits, the district court inspected the property.

Following trial, the district court made findings of fact and conclusions of law pertaining to both the well easement granted in Dorrance's will and the pipeline easement claimed by Marvin. The district court determined the metes and bounds of Marvin's well to include 120 feet surrounding the well for maintenance and repair. The court's determination of the bounds of the well easement is not at issue on appeal.

The district court next determined that Marvin held an easement by implication from former use for the pipeline, including an easement of 20 feet on each side of the pipeline to maintain, repair, and replace it. The district court ordered that Marvin be allowed access to the pipeline easement and the well via the two gates in the northwest corner of Harvey's property, and the court enjoined Harvey from interfering with access to or utilization of either easement. Harvey appeals from this order, assigning that the district court's determination of the existence and extent of the pipeline easement was in error.

## ASSIGNMENTS OF ERROR

Harvey assigns that the district court erred in (1) holding that Marvin was entitled to an easement to maintain, repair, and replace the underground pipe running from the irrigation well and (2) establishing that Marvin's pipeline easement extends 20 feet on each side of the pipe and includes access through the gates installed by Harvey in the northwest corner of Harvey's property.

## STANDARD OF REVIEW

[1] An adjudication of rights with respect to an easement is an equitable action. *Homestead Estates Homeowners Assn. v.*

*Jones*, 278 Neb. 149, 768 N.W.2d 436 (2009). On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court. *Hauxwell v. Henning*, 291 Neb. 1, 863 N.W.2d 798 (2015). But when credible evidence is in conflict on material issues of fact, the court may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Homestead Estates Homeowners Assn. v. Jones, supra*.

## ANALYSIS

Before analyzing the assigned errors, we first address Marvin's argument that Harvey's failure to assign as error the granting of an injunction prohibiting Harvey from interfering with Marvin's access to or use of the pipeline easement is fatal to his appeal. Marvin contends that because the injunction was not assigned as error, it must stand, even if this court were to find that Harvey should succeed on his assigned errors. Given that the two assigned errors (entitlement to the easement and the extent thereof) are the bases for the injunction, we determine that failure to separately assign as error the granting of the injunction does not preclude us from addressing the issues raised in this appeal.

*Easement to Maintain, Repair,*
*and Replace Pipeline.*

Harvey first assigns that the district court erred in determining that the west half of Section 23 held an easement by implication of former use against the southeast quarter of Section 23 for the maintenance, repair, and replacement of the underground pipeline. Harvey states that Marvin's proposed access route to the well does not include access to the pipeline because Dorrance's will did not grant an easement in the pipeline. He argues that the pipeline easement and northwest gate access route is not reasonably necessary because the pipeline

has never previously needed repair and alternative methods of access and repair exist. For the reasons below, we disagree with this analysis.

[2-4] An easement by implication from former use arises only where (1) the use giving rise to the easement was in existence at the time of the conveyance subdividing the property, (2) the use has been so long continued and so obvious as to show that it was meant to be permanent, and (3) the easement is necessary for the proper and reasonable enjoyment of the dominant tract. *O'Connor v. Kaufman*, 260 Neb. 219, 616 N.W.2d 301 (2000). The degree of necessity required to prove the existence of an implied easement from former use is reasonable necessity. *Id.* Reasonable necessity means that the easement is necessary for the proper and reasonable enjoyment of the dominant tract as it existed when the severance was made. See *id.*

In *O'Connor v. Kaufman, supra*, a home had long been served by a well, pump, and pipeline. In 1975, the land was subdivided such that the well and the home were under different ownership. *Id.* The owners of the parcel containing the well removed the well and pipeline to plant crops. *Id.* In the ensuing litigation, the Nebraska Supreme Court found that the tract containing the home enjoyed an easement by implication of former use for maintenance of the well, pump, and pipeline. *Id.*

The present case is similar to *O'Connor v. Kaufman, supra*. With regard to the first element, use at the time of subdivision, there is no dispute that Marvin was using the underground pipeline to irrigate crops on the west half of Section 23 at the time that he and Harvey received their parcels following Dorrance's death. Because Dorrance owned both parcels at the time he drilled the well in 1971 and until his death, this was the first time that the well was under separate ownership from the west half of Section 23, which it serves. Accordingly, the first element of an easement by implication from former use is met in this case.

Under the second element, we consider whether the use has been so long continued and so obvious as to show that it was meant to be permanent. *O'Connor v. Kaufman, supra*. Here, too, the facts support such a finding. The underground pipe has occupied its current location and carried water from the well since the well was drilled in 1971. This well and pipeline were meant to permanently serve the irrigation of the west half of Section 23, as demonstrated by the pipeline's use carrying water to the west half of Section 23 for over 30 years, and Dorrance's inclusion of an easement for the well in his will. See *O'Connor v. Kaufman, supra* (holding that continuous use of well for over 25 years, up to time when property was divided, demonstrated intent to create permanent easement). Therefore, although Dorrance's will does not mention an easement for the underground pipeline, we find on de novo review that the long, obvious, and continuous use of the pipeline shows that Dorrance intended a permanent easement for maintenance of the pipeline.

[5] Harvey argues that an easement in the pipeline should not include the right to repair or replace the pipeline because it has never been previously repaired. Therefore, Harvey argues that repair of the pipeline is not a use "so long continued and so obvious as to show that it was meant to be permanent." *O'Connor v. Kaufman*, 260 Neb. 219, 227, 616 N.W.2d 301, 308 (2000). We disagree and think the applicable analysis is whether the pipeline has been in continuous use, not whether it has been under continuous repair. We find no case law supporting Harvey's apparent assertion that the holder of an easement by implication of former use for a pipeline may not repair the pipeline unless it has previously been repaired. Instead, the Nebraska Supreme Court has held that every easement carries with it by implication the right of doing whatever is reasonably necessary for the full enjoyment of the easement itself, including the right of access to make repairs and enter upon the servient estate for this purpose. See *Ricenbaw v. Kraus*, 157 Neb. 723, 61 N.W.2d 350 (1953). However, the

right to repair does not always include unconditional access to the surface land disturbed by repairs. See *id.* While we conclude here that the easement by implication of former use for the pipeline includes the right to repair or replace the pipeline, we will discuss in greater detail under our analysis of the second assignment of error whether the district court was correct in determining that Marvin's pipeline easement included the rights to a surface tract extending to 20 feet on each side of the pipeline.

Finally, we consider whether an easement for maintenance, repair, and replacement of the pipeline is reasonably necessary for Marvin's enjoyment of the west half of Section 23. We find that it is. Although the parties submitted conflicting evidence as to whether Marvin could access the well via a different route and whether the pipeline could be rerouted to travel under less of Harvey's property, the Nebraska Supreme Court has previously recognized that the standard of necessity for an easement by implication of prior use is only reasonable necessity and that testimony regarding alternate routes of irrigation water are grounded in a strict necessity standard that is not applicable. See *Hillary Corp. v. United States Cold Storage*, 250 Neb. 397, 550 N.W.2d 889 (1996). Other cases have recognized that carrying water to adjacent land is a use reasonably necessary for the enjoyment of that land. See *O'Connor v. Kaufman, supra*. In this case, the facts demonstrate that the pipeline is necessary to carry irrigation water from the well to the west half of Section 23. For these reasons, this assignment of error is without merit.

*Extent and Route of Easement.*

Harvey next assigns that the district court erred in determining that the pipeline easement included 20 feet of surface land on each side of the pipeline and access through the gates in the northwest corner of Harvey's property. Harvey argues that the access route granted was in error because an alternate route to the well exists. However, Harvey admits that his proposed

alternate route does not include access to the pipeline, and as we determined above, the pipeline and access to the pipeline are reasonably necessary for use and enjoyment of the west half of Section 23. See *O'Connor v. Kaufman, supra*. Furthermore, there was conflicting testimony as to the sufficiency of the alternate route. Although we try factual issues de novo on the record, when credible evidence is in conflict on material issues of fact, we may consider and give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Homestead Estates Homeowners Assn. v. Jones*, 278 Neb. 149, 768 N.W.2d 436 (2009). We also give weight to the fact that the trial court personally viewed the area in question. Accordingly, we determine that it was appropriate to grant an easement through the gates at the northwest corner of Harvey's property.

[6] Harvey next argues, without citation to supporting authority, that if Marvin is allowed access to the pipeline from his property, he should be responsible for any damages to Harvey's property. We recognize that an owner of a dominant tract may not inflict any unnecessary injury to the servient tract in making easement repairs. See *Ricenbaw v. Kraus*, 157 Neb. 723, 61 N.W.2d 350 (1953). In *Ricenbaw v. Kraus*, this meant that the owner of a tile drain was required to restore the surface of the servient tract's land to substantially the same condition as it had been before performance of repair work. However, the facts here are distinguishable, and after de novo review, we determine that these facts support the district court's determination that the easement by implication of former use extends to the surface above the pipeline. Marvin introduced testimony at trial that an easement of 20 feet extending on each side of the pipeline would be necessary to repair the pipeline. Marvin testified that his longtime route of driving above the pipeline allows him to visually inspect for leaks and that he recently found a leak in the pipeline through this method which will require repair. Marvin also testified that he has long accessed the well twice per day via a route

that roughly corresponds to the pipeline's route. Through years of accessing the well along this path, he has built a dirt road that does not flood and is suitable for his fuel truck and other machinery required to routinely service the well. Harvey had not planted corn along this route until 2012, so the established use of this land has been to provide an access road to the easement well. Given the long use of this general access pathway, the fact that it assists Marvin in monitoring and maintaining the pipeline, and the importance of suitable access to the well, we conclude on de novo review that the district court did not err in determining that the pipeline easement extends to the surface above the pipeline, including 20 feet on each side of the pipeline and access via the gate on the northwest corner of Harvey's property.

Harvey finally argues that he should be allowed to determine the location of the easement because he is the grantor of the easement. See *Graves v. Gerber*, 208 Neb. 209, 302 N.W.2d 717 (1981) (failure of grant to definitely locate easement does not give grantee right to use servient estate without limitation; in such case, grantor may designate location, and if he fails to do so, grantee may then make designation which, in either case, must be reasonable). However, while Harvey owns the servient estate, there is no evidence that he is the grantor of the easement, nor that he ever held an ownership interest in the easement well or pipeline that would have allowed him to be the grantor of this easement. For the foregoing reasons, we find this assignment of error to be without merit.

## CONCLUSION

Following a de novo review, we find no error in the determinations of the trial court and accordingly affirm its judgment.

AFFIRMED.