SOUTHWEST TRINITY CONSTRUCTORS, INC., APPELLANT AND CROSS-APPELLEE, v. ST. PAUL FIRE & MARINE INSURANCE COMPANY, APPELLEE AND CROSS-APPELLANT.

497 N.W.2d 366

Filed March 26, 1993.    No. S-90-566.

Robert G. Simmons, Jr., of Simmons, Olsen, Ediger, Selzer & Ballew, P.C., for appellant.

P. Shawn McCann and William H. Selde, of Sodoro, Daly & Sodoro, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

This action arose out of a dispute concerning a contract for the construction of an electric transmission line in Texas.

The plaintiff, Southwest Trinity Constructors, Inc., is a South Dakota corporation and is a subcontractor that agreed with the prime contractor, Transpower Constructors, a subsidiary of the Commonwealth Companies of Lincoln, Nebraska, to construct the foundations for the towers carrying the line. Central Power and Light Company is the owner that entered into the contract with Transpower for construction of the line. The prime contract was for $870,277. The subcontract was for $469,863. The contract authorized Central Power to require Transpower to furnish performance bonds to Central Power guaranteeing faithful performance of the work and the payment of the contractor's obligations arising in connection with the work. The defendant, St. Paul Fire & Marine Insurance Company, is the surety on the performance bonds furnished to Central Power by Transpower, the prime contractor.

A year before the contract involved in this case was signed, the defendant insurance company was concerned about the financial stability of Commonwealth, as the defendant had written a number of performance bonds and payment bonds for Commonwealth. Because of its concerns, the defendant agreed to guarantee a $12-million line of credit offered by

the First National Bank of St. Paul, Minnesota, to Commonwealth.

In order to secure the guarantee, a lockbox account was established at the bank. Payments to Transpower and Commonwealth were received by the bank and deposited in the lockbox account. Approximately $7.8 million passed through the lockbox account each month. Employees of the defendant reviewed requests received from Commonwealth to transfer funds from the lockbox account to general Commonwealth accounts and determined whether the requests should be approved. The defendant's policy for approval of those transfers was to see that the funds were requested for payments on bonded jobs, to pay for general overhead expenses of Commonwealth, or for payments to repay the line of credit.

From November 1985 to June 26, 1987, the bank, the defendant, and Commonwealth functioned under the lockbox agreement. The payments due Transpower under its contract with Central Power were made to the lockbox account.

On June 26, 1987, Commonwealth acknowledged to the defendant that it was insolvent and unable to continue operations. The defendant then assumed the remaining obligations for bonded jobs from that time forward. It also took the money then in the lockbox account totaling $277,775.63.

The plaintiff completed its work for Transpower by December 1986, except for some incidental cleanup work, which was completed by April 1987. The plaintiff submitted its final invoice, for $87,094.09, to Transpower on April 16, 1987.

On July 2, 1987, the plaintiff presented a claim to the defendant. The defendant denied the plaintiff's claim because the plaintiff did not present a sworn statement and because the invoice was not sent to the defendant within the time limit required by the bond, which was a statutory payment bond under Texas law.

This action was commenced on March 28, 1988. The petition alleged that the defendant was indebted to the plaintiff upon a variety of legal and equitable theories including a contractual obligation on the bond, unjust enrichment and subrogation in failing to pay the plaintiff from funds received from Central

Power, and theories of negligence and conversion.

On September 11, 1989, the plaintiff filed an amended petition, to which the defendant filed a demurrer. On January 22, 1990, the trial court sustained the demurrer and ordered the plaintiff to elect between its legal or equitable theories of recovery. On February 9, 1990, the plaintiff filed its second amended petition, in which it elected to proceed upon its equitable theories of recovery.

On May 25, 1990, the trial court found that the plaintiff was not entitled to recover under its equitable theories because the plaintiff had an adequate legal remedy in the nature of a suit upon the performance bond which was an adequate remedy at law. The petition was dismissed, and the plaintiff appeals from that judgment.

The plaintiff's principal assignments of error all relate to the order of January 22, 1990, which required the plaintiff to elect between its legal or equitable theories of recovery. The plaintiff argues that the remedies were not inconsistent.

A party may not plead alternative theories of recovery which are inconsistent in the sense that the party cannot logically choose one theory without renouncing the other, and a party pleading inconsistent theories of recovery may be required to elect between them. *Tobin v. Flynn & Larsen Implement Co.*, 220 Neb. 259, 369 N.W.2d 96 (1985).

The two remedies involved in this case were inconsistent because in order to recover on the equitable theory, the plaintiff was required to prove that it had no adequate remedy at law. See, *Joyce v. Joyce*, 229 Neb. 831, 429 N.W.2d 355 (1988); *Emry v. American Honda Motor Co.*, 214 Neb. 435, 334 N.W.2d 786 (1983). "A suit in equity will not lie when the plaintiff has a plain and adequate remedy at law." *Ganser v. County of Lancaster*, 215 Neb. 313, 317, 338 N.W.2d 609, 611 (1983). Proof that would enable the plaintiff to recover on the performance bonds would establish that the plaintiff had an adequate remedy at law, thus defeating its equitable cause of action. For that reason, it was not error to require the plaintiff to elect between the legal or equitable theories of recovery.

"[W]here a statute provides an adequate remedy at law, equity will not entertain jurisdiction, and the statutory remedy

must be exhausted before equity may be resorted to." *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 38, 302 N.W.2d 655, 660 (1981).

It is unnecessary to consider the plaintiff's other assignments of error. The defendant cross-appeals from that part of the trial court's May 25, 1990, order which denied its request for attorney fees. The defendant argues that the trial court erred in refusing to grant its request for attorney fees because under Texas law, if a claim under a statutory payment bond is invalid or unenforceable, the surety under the bond is entitled to recover all reasonable costs of defending the claim, including attorney fees. Tex. Prop. Code Ann. § 53.156(b) (West 1984).

The trial court required the plaintiff to elect between its legal or equitable theories. The plaintiff elected to pursue its equitable remedies, and the defendant was not required to defend the plaintiff's claim under the statutory payment bond.

In denying the defendant's request for attorney fees, the trial court found that the case was tried as a claim in equity and that Nebraska's substantive laws of equity applied. The trial court also found that the evidence in the case demonstrated substantial litigable issues under the facts and the law and that the claim was not spurious, frivolous, or made in bad faith.

In its brief, the defendant bases its request for attorney fees entirely on Texas law; however, as the trial court correctly found, this equitable claim is based on Nebraska law.

Generally, costs and expenses of litigation, including attorney fees, may not be recovered unless provided for by statute or as a uniform course of procedure. *Haman v. Marsh*, 237 Neb. 699, 467 N.W.2d 836 (1991); *Gottsch Feeding Corp. v. Red Cloud Cattle Co.*, 229 Neb. 746, 429 N.W.2d 328 (1988).

Neb. Rev. Stat. § 25-824 (Reissue 1989) requires the trial court to order attorney fees against any party that has brought or defended a civil action that alleges a claim or defense which is determined to be frivolous or made in bad faith.

We agree with the trial court's findings that the plaintiff's claim was not spurious, frivolous, or made in bad faith.

The defendant's cross-appeal is without merit.

The judgment of the district court is affirmed.

AFFIRMED.