ROGER EUGENE PARKER, APPELLEE, V. BEVERLY MAXINE PARKER, NOW KNOWN AS BEVERLY MAXINE WASHINGTON, APPELLANT, AND LISA PARKER, INTERVENOR-APPELLEE.

636 N.W.2d 385

Filed December 4, 2001.   No. A-00-678.

David L. Herzog, of Herzog & Herzog, P.C., and Kathy Pate Knickrehm for appellant.

Lisa Parker, pro se.

HANNON, INBODY, and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

This is an appeal by Beverly Maxine Parker, now known as Beverly Maxine Washington, from an order of the district court for Douglas County denying Beverly's motion to set aside Roger Eugene Parker's quitclaim deed to Lisa Parker conveying his interest in real property located in Omaha, Nebraska. Lisa filed a motion and petition in intervention and was granted permission by the court to intervene in this matter. Because the order appealed from makes findings but neither grants nor denies the relief sought by Lisa in her petition in intervention, we conclude that the order appealed from is not final. Therefore, we dismiss the appeal for lack of jurisdiction.

## BACKGROUND

Roger and Beverly were married and had three children prior to 1977. Roger and Beverly were divorced on February 3, 1977, in Minnesota. The Minnesota judgment and decree of dissolution required Roger to pay Beverly $100 per month in child support. Roger filed a petition for registration of foreign judgment in the district court for Douglas County on September 16, 1977, seeking the registration in Nebraska of the Minnesota decree as well as specific visitation rights. Roger paid child support for approximately 3 years and then ceased paying child support to Beverly.

Roger married Lisa on October 8, 1977. One child was born on February 20, 1980, as a result of their marriage. Roger and Lisa were divorced in Minnesota on September 30, 1985. No support was ordered in the decree, which indicated that child support was "reserved" as Roger was unemployed at that time. Although no longer married, Roger continued to live with Lisa and the minor child.

In 1992, while Roger and Lisa were roommates, Lisa applied for a loan to build a new house. She was informed by the mortgage broker that her income was not sufficient to qualify her for the loan. Roger agreed to assist her in connection with obtaining a loan. A loan was granted to Roger and Lisa for $74,400 to purchase a house in Omaha. The property was purchased in June 1992, and both Roger's and Lisa's names appear on the deed as joint tenants.

With regard to their postdivorce living arrangement, Roger and Lisa maintained separate finances. Lisa permitted Roger to live in the house to fulfill his parental obligation to their minor child. In exchange, Lisa did not seek any child support from Roger or any rent. Lisa paid the entire downpayment, made all mortgage payments, and paid for all of the improvements on the property. Roger did, however, pay for the utilities and also performed some yardwork. In mid-October 1999, Roger and Lisa's child moved out of Lisa's house, having reached the age of majority in February of that year. Roger moved out of the house on approximately November 1, 1999.

On January 28, 2000, Beverly filed a motion for judgment on unpaid child support and accrued interest against Roger following unsuccessful efforts to collect child support from Roger. Thereafter, Lisa asked Roger to sign a quitclaim deed to the property. Roger agreed and signed a quitclaim deed on February 2. Roger testified that he voluntarily signed the quitclaim deed because Lisa asked him to and because he felt he did not have any interest in the property, having merely cosigned the loan to enable Lisa to obtain the mortgage. Roger also testified that he was not paid anything when he signed the quitclaim deed. Roger acknowledged that he had an obligation to pay a substantial sum of unpaid child support to Beverly at the time he executed the quitclaim deed.

On February 7, 2000, Beverly filed the instant motion seeking an order vacating and setting aside the conveyance of the property by quitclaim deed from Roger to Lisa, alleging said conveyance was fraudulent under the Uniform Fraudulent Transfer Act, Neb. Rev. Stat. § 36-701 et seq. (Reissue 1998). Lisa filed a motion requesting leave to intervene in the proceedings on February 11. Although not separately file-stamped, a petition in intervention

was included with the motion to intervene. Allegations in both Lisa's motion and petition included the assertions that there was a lien against her real property resulting from the unpaid child support owed by Roger to Beverly, that Beverly had refused to sign a release of that lien, and that as a result of Beverly's refusal, Lisa had been unable to refinance the existing loan on her property. Lisa's petition requested an order releasing the child support lien. The district court granted Lisa the right to intervene on February 17 and entered an order of judgment on March 3 against Roger in favor of Beverly for unpaid child support and accrued interest in the total amount of $27,420.99.

The court held hearings in March, April, and May 2000 on the issues surrounding the quitclaim deed. Lisa's attorney attended all of these hearings, and Lisa was present for all but the April 24 hearing, where no direct testimony was adduced. Beverly's attorney elicited direct testimony from Lisa on issues surrounding the quitclaim deed and the property at the March 1 and 23 hearings. In turn, Lisa's attorney elicited direct testimony from Roger at the March 1 hearing on these same issues and presented rebuttal testimony from Lisa at the May 30 hearing. Beverly's attorney offered various documentary exhibits at these hearings, such as a copy of the quitclaim deed, documentation related to the loan obtained on the property, and Roger's deposition, which were admitted into evidence by the court. In its order filed June 7, 2000, the district court overruled Beverly's motion to vacate and set aside the quitclaim deed, concluding that there was not clear and convincing evidence that the execution of the quitclaim deed was fraudulent within the meaning of § 36-705.

The court further found that the evidence established that Roger's interest in the property prior to execution of the quitclaim deed was mere legal title. The court found the evidence undisputed that although the title was taken in joint tenancy, all the money invested in the property was Lisa's. The court noted that both parties treated the property as Lisa's only. The court noted that at the time the present proceedings commenced, Roger had not been living on the property for at least 3 months. The court found Roger's testimony that he had no interest in the property to be very credible, especially in light of the fact that it was clearly adverse to his economic interests in the case, where

he was facing a substantial judgment for unpaid child support and accrued interest.

The district court cited *Action Realty Co., Inc. v. Miller*, 191 Neb. 381, 215 N.W.2d 629 (1974), and *Halsted v. Halsted*, 169 Neb. 325, 99 N.W.2d 384 (1959), in support of the propositions that a judgment lien does not attach to mere legal title where equitable and beneficial interests are in another, that a judgment lien is a lien only on the actual interest of the judgment debtor, and that a judgment lien is subject to all existing equities, whether of record or not. The court reasoned that Roger's interest in the property was bare legal title and that all the equitable and beneficial interests in the property were with Lisa. The court concluded that Beverly had not met her burden of proof on this ground by a preponderance of the evidence.

Finally, the court cited *Nowka v. Nowka*, 157 Neb. 57, 58 N.W.2d 600 (1953), in support of the proposition that a lien for unpaid child support comes into existence upon service of the summons of the action seeking unpaid child support. The court reasoned that at the time the quitclaim deed was executed on February 2, 2000, no lien against Roger for unpaid child support existed. The court concluded that the lien against Roger for unpaid child support came into existence on February 10, 2000, when Roger was served with the motion and notice of hearing. The court further concluded that the lien did not attach in the present case as Roger's interest in the property before the quitclaim deed was executed was mere legal title.

Although the court made a number of findings, as indicated above, regarding the existence and attachment of a lien for child support on the property, the court did not directly address the request contained in Lisa's petition in intervention seeking a release of the lien from the property. The court overruled Beverly's motion to vacate and set aside the quitclaim deed but neither granted nor denied the relief sought by Lisa.

Beverly's motion for new trial was overruled, and Beverly subsequently perfected her appeal to this court.

## ASSIGNMENTS OF ERROR

Beverly asserts that the district erred in (1) finding that she failed to meet her burden of proof concerning Roger's alleged

fraudulent transfer of his interest in the property to Lisa, (2) failing to set aside Roger's transfer of his interest in the property to Lisa, and (3) finding no lien on the property against Roger existed prior to the time the quitclaim deed was executed.

## STANDARD OF REVIEW

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, in which case the appellate court must reach a conclusion independent from the lower court's decision. *Martin v. Martin*, 261 Neb. 125, 621 N.W.2d 511 (2001).

## ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *In re Appeal of Stoller*, 261 Neb. 150, 622 N.W.2d 878 (2001). Our concern is that the court's June 7, 2000, order does not adjudicate all claims of all parties because it neither grants nor denies the relief prayed for by Lisa in her petition in intervention and that therefore it is not a final order. For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Keef v. State*, 262 Neb. 622, 634 N.W.2d 751 (2001); *Scottsdale Ins. Co. v. City of Lincoln*, 260 Neb. 372, 617 N.W.2d 806 (2000).

In *Keef v. State, supra*, the district court entered a partial summary judgment on fewer than all of the claims of the plaintiffs and attempted to invoke Neb. Rev. Stat. § 25-705(6) (Cum. Supp. 1998) in determining that its order of partial summary judgment was a final order. On appeal, the Nebraska Supreme Court discussed § 25-705(6), now codified at Neb. Rev. Stat. § 25-1315(1) (Cum. Supp. 2000). Section 25-1315(1) provides:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for

> delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

The *Keef* court noted that § 25-1315(1) is implicated only where multiple causes of action are presented or multiple parties are involved and a final judgment is entered as to one of the parties or causes of action. The *Keef* court further noted:

> Prior to the enactment of § 25-1315, an order that effected a dismissal with respect to one of multiple parties was a final, appealable order, and the complete dismissal with prejudice of one of multiple causes of action was a final, appealable order, but an order dismissing one of multiple theories of recovery, all of which arose from the same set of operative facts, was not a final order for appellate purposes. . . . Section 25-1315 was an evident attempt by the Legislature to simplify the issue and clarify many of the questions regarding final orders when there are multiple parties and claims. . . .
>
> Section 25-1315 does not, however, provide "magic words," the invocation of which transforms any order into a final judgment for purposes of appeal.

(Citations omitted.) 262 Neb. at 628-29, 634 N.W.2d at 758.

In the present case, there is no such express determination regarding delay or direction for entry of judgment, and therefore the court's June 7, 2000, order is not appealable unless all of the claims of Beverly as plaintiff and Lisa as intervenor are viewed as adjudicated.

The last paragraph of the June 7, 2000, order indicates: "IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the motion to vacate and set aside the quitclaim deed is hereby overruled." (Emphasis omitted.) The preceding paragraphs of the order outline the factual and procedural background of the case and set forth the factual and legal findings made by the court

relating to the alleged fraudulent nature of conveyance by quit-claim deed and to the existence and/or attachment of a lien for unpaid child support to the property. However, there is nothing in the June 7 order translating the court's findings regarding the lien into an order or judgment on Lisa's petition in intervention, and there is no other document in the transcript before us that purports to address the request for relief asserted by Lisa in her petition in intervention.

It has long been the rule that a finding by a trial court is not an appealable order. See *State v. Carney*, 220 Neb. 906, 374 N.W.2d 59 (1985) (where Nebraska Supreme Court said that after granting motion which determined defendant was entitled to acquittal, trial court should have entered judgment dismissing action). The *Carney* court also quoted with approval from 49 C.J.S. *Judgments* § 4 (1947): " 'As a general rule, decisions, opinions, findings, or verdicts do not constitute a judgment or decree but merely form the basis on which the judgment is subsequently to be rendered.' " 220 Neb. at 908, 374 N.W.2d at 61. See, also, Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2000) (stating that "[a] judgment is the final determination of the rights of the parties in an action").

The order appealed from in this case is not final. Accordingly, this court is without jurisdiction to consider Beverly's appeal, and it must be dismissed. In the absence of a judgment or final order disposing of a case, an appellate court is without jurisdiction to act and must dismiss the purported appeal. *Keef v. State*, 262 Neb. 622, 634 N.W.2d 751 (2001).

Recently, this court has had to dismiss several appeals because a trial court failed to either grant or deny all of the relief prayed for by one of the parties. We suggest, at least in equity cases, that the trial judge include at the end of any journal intended to be a final order a phrase to the effect that "any request for relief by any party not specifically granted by this order is denied." Along the same lines, we suggest that trial courts discontinue the practice of stating findings and then ending the journal with the phrase "It is so ordered." This phrase adds nothing to the journal, because a finding by a court does not clearly mean the court intends to award the relief someone might conclude is necessary; usually, the expression is either

unnecessary or meaningless in determining what, if anything, the trial court had ordered.

## CONCLUSION

The June 7, 2000, order of the district court did not dispose of all issues and is, therefore, not a final, appealable order.

APPEAL DISMISSED.