McCombs Realty, Inc., a Nebraska corporation, appellant,
v. Western Auto Supply Company, doing business as
Parts America, a corporation, appellee.

641 N.W.2d 77

Filed March 12, 2002.   No. A-00-1140.

William G. Blake, of Pierson, Fitchett, Hunzeker, Blake &
Katt, for appellant.

Rodney M. Confer and Corey L. Stull, of Knudsen,
Berkheimer, Richardson & Endacott, L.L.P., for appellee.

Hannon, Inbody, and Carlson, Judges.

Inbody, Judge.

## INTRODUCTION

McCombs Realty, Inc., a Nebraska corporation, appeals from
the Lancaster County District Court's dismissing this action for
forcible entry and detainer and denying its motion for new trial.
For the reasons stated herein, we affirm.

## STATEMENT OF FACTS

On June 6, 2000, a bench hearing was held in the Lancaster County District Court concerning McCombs Realty's action in forfeiture and detainer. In March 1993, Western Auto Supply Company (Western Auto), a wholly owned subsidiary of Sears, Roebuck and Co. (Sears), entered into a contract with PST Partnership (PST) for the purchase of the subject property in Lincoln, Nebraska, for $494,730. After the sales contract was signed and upon determining that the property could not be subdivided, Western Auto decided that it did not want to purchase the property. The agreement was revised, wherein Western Auto and PST entered into a 50-year ground lease on May 12, 1993, for a parcel of land described as "[a] tract of land 159 feet fronting on 48th Street by a depth of 270 feet."

The lease agreement was to begin on May 1, 1993, and end April 20, 2043. Under the terms of the lease, Western Auto was required to make rental payments of $4,125 per month beginning November 1, 1993, and ending December 31, 1994, or until Western Auto opened its store for business, whichever came first. The lease also provided that on or about January 1, 1995, Western Auto was to pay PST the sum of $494,730 for the term of January 1, 1995, through April 20, 2043. Western Auto was also required to make a $100 annual payment on the first business day of each year to PST.

In 1994, Western Auto finished construction of a building upon the property at a cost of approximately $533,868. From November 1, 1993, until the time Western Auto's store opened for business, March 1994, Western Auto paid $20,625 in rental payments to PST. On or before January 1, 1995, Western Auto paid a lump sum of $494,730 to PST for the lease term to 2043. The parties stipulated that as of April 1998, the value of the real estate was $610,000 and the improvements made to the property by Western Auto were valued at $518,000.

In 1996, McCombs Realty bought the property from PST for $1,500. In June 1997, many of the real estate functions of Western Auto's real estate administrative offices were transferred from Kansas City to the offices of its parent company, Sears, in Hoffman Estates, Illinois. Western Auto attempted to notify each of its landlords that its property management functions were

being transferred to Sears' office in Hoffman Estates. Bennie McCombs, president of McCombs Realty, testified that he never received such notice.

The first $100 annual payment to McCombs Realty administered by Sears should have been made on the first business day of 1998. However, when McCombs did not receive this payment by February 17, he sent a letter to the real estate department in Kansas City notifying them that the payment was past due. The letter was sent to the Kansas City office even though McCombs knew, through a conversation with the Kansas City real estate representatives, that the Kansas City real estate department had moved the previous June to Hoffman Estates. McCombs acknowledged that he sent the letter by regular mail and that he did not intend the letter to be the official notice of default.

According to McCombs, he did not receive any response from Western Auto until mid-March 1998, when he received a telephone call from Michelle Green, a billing analyst from Sears' office in Hoffman Estates. McCombs testified that pursuant to his telephone conversation with Green, on March 19, 1998, he sent Green a copy of the February 17 letter, lease, and other information by Federal Express, next-day delivery. McCombs testified that this packet was intended to be the official notice of default and was sent to both the Kansas City office and the Hoffman Estates office. McCombs stated that the lease required official notices to be sent to the real estate department in Kansas City and that he had never received notification from Western Auto that notices were no longer to be sent to the Kansas City office. Since he still had not received payment, McCombs sent a notice to vacate the premises to Western Auto on April 7. McCombs received an envelope from Western Auto on April 16 and, by shining a flashlight through it, ascertained that it contained the $100 payment. Because he had already filed notice to vacate the premises, he returned the envelope unopened.

Green testified that in February 1998, she was a billing analyst for Sears and was responsible for ensuring that all lease payments were made to all Western Auto landlords. According to Green, at that time, she was responsible for making payments on approximately 800 Western Auto leases, of which approximately 10 required annual, rather than monthly, payments.

When the property management functions for Western Auto were transferred from Kansas City to Hoffman Estates, these few annual payments were not placed on the computerized "rent roll" of Western Auto leased properties whose payments were automatically paid when due. Green was not aware that these payments, including the $100 annual payment due McCombs Realty, were not on the rent roll until it was brought to her attention by McCombs' letter.

According to Green, approximately 3 weeks after McCombs sent the February 17, 1998, letter to Kansas City, she received it in the mail from the Kansas City office. After attempting to locate both a payment file and a lease file on Western Auto, she called McCombs and asked for a copy of the lease. Green gave the lease to a real estate manager for Sears, who read the lease and told Green that under the terms of the lease, McCombs Realty was due a $100 annual payment. Green overnighted a check request to the Kansas City office, and a check was made out to McCombs Realty on April 1. Green called McCombs to confirm that he received the check and discovered that for some reason he never received the check. A second check was issued to McCombs Realty, which McCombs returned unopened because he had already terminated the lease.

On September 28, 2000, the district court dismissed McCombs Realty's action and denied its request for possession of the property. The court stated:

> It would be absurd to require forfeiture of over a million dollars in prepayments and improvements because of defendant's negligent late payment of the $100 annual payment, which it cured within 30 days. Since the Ground Lease does not refer to the annual $100 payment as "rent," the Court concludes that the 15 day period to cure a default in payment of "rent" was not intended by the parties to apply to this situation where the $100 annual payment was tardy.
>
> . . . Even if the parties intended that failure to make a $100 annual payment within the fifteen day period allowed to cure default in non-payment of "rent" would give lessor the right to terminate the lease, this Court refuses to enforce such a result as a matter of equity.

McCombs Realty moved for a new trial on October 9, 2000, which motion was denied. McCombs Realty has timely appealed to this court.

## ASSIGNMENT OF ERROR

The assignments of error on appeal can be consolidated into the following issue: The district court erred in dismissing the action and failing to order restitution of possession to McCombs Realty.

## STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *O'Connor v. Kaufman*, 260 Neb. 219, 616 N.W.2d 301 (2000). On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Newman v. Rehr*, 10 Neb. App. 356, 630 N.W.2d 19 (2001).

## ANALYSIS

McCombs Realty contends that the district court erred in dismissing its action and failing to order repossession of the property.

When the right to terminate a contract on notice is reserved without any fraud or mistake, but with the actual knowledge and consent of all parties to the agreement, it is as valid in law as any other clause of the instrument; the courts, when called upon, will enforce it, unless to do so would be manifestly contrary to equity and good conscience. *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 254 Neb. 418, 576 N.W.2d 806 (1998). The forcible entry and detainer statutes, Neb. Rev. Stat. §§ 25-21,219 to 25-21,235 (Reissue 1995), and the general stipulations for forfeiture in a lease are considered in equity for securing the rent, and not for forfeiting the lease, when the tenant acts in good faith and pays promptly on demand. See *Farmer v. Pitts*, 108 Neb. 9, 187 N.W. 95 (1922).

The defense in forcible entry and detainer actions may be equitable as well as legal, and the tenant will be relieved from the technical forfeiture when absolute good faith is shown and the circumstances call for the exercise of equitable principles in his

or her behalf to prevent gross injustice. *Id.* Equity has the power to relieve against a forfeiture of a lease for nonpayment of rent on the day stipulated, and such power should be exercised when the circumstances are such as to call for the exercise of equitable principles and where if withheld, gross injustice will follow when the failure to pay was not willful or the result of such culpable neglect as to amount to the same thing. *Ostenberg v. Scottsbluff Investment Co.*, 106 Neb. 143, 183 N.W. 95 (1921).

The record establishes that the $100 annual payment was not paid to McCombs Realty as a result of a clerical error causing annual payments to be left off the rent roll made during the period in which Western Auto's real estate functions were being transferred to Sears. Upon learning that McCombs Realty had not received the annual payment, Sears made a good faith attempt to correct the problem expeditiously. The evidence establishes that a check was made out to McCombs Realty on April 1, 1998, but was not received by McCombs Realty. When Green called McCombs to confirm that he had received the April 1 check and upon learning that he had not, another check was promptly issued and received by McCombs on April 16. McCombs returned the envelope containing the check unopened. Nothing in the record suggests that Western Auto's failure to pay the annual payment was willful or a result of culpable neglect.

Assuming without deciding that the $100 annual payment was rent, that McCombs' March 19, 1998, letter complied with the notice provision, and that he was thus entitled to terminate the lease, it would be manifestly contrary to equity and good conscience to enforce the lease's forfeiture provision and require Western Auto to forfeit over $1 million simply for failure to pay a $100 annual payment. Therefore, this court affirms the judgment of the district court.

## CONCLUSION

For the reasons stated above, we find that it would be manifestly contrary to equity and good conscience to enforce the lease's forfeiture provision. Therefore, the judgment of the district court is affirmed.

AFFIRMED.