I.P. HOMEOWNERS, INC., A NEBRASKA CORPORATION, APPELLANT, v. CURT MORROW AND LINDA MORROW, APPELLEES.

668 N.W.2d 515

Filed September 2, 2003. No. A-02-151.

Michael F. Pistillo, of Pistillo & Pistillo, P.C., for appellant.

Timothy Krajicek for appellees.

HANNON, INBODY, and MOORE, Judges.

HANNON, Judge.

## INTRODUCTION

I.P. Homeowners, Inc., filed a petition for forcible entry and detainer seeking a writ of restitution of lots leased to Curt Morrow and Linda Morrow, upon which lots the Morrows lived and had

placed improvements. The district court found that the petition for forcible entry and detainer should not be granted based on the Morrows' conduct and instead treated the case as an action in equity; enjoined the Morrows from certain actions it deemed in violation of the leases; advised the parties that if further actions were brought and I.P. Homeowners were granted possession, it would have to pay the Morrows for the fair value of their improvements upon the leased lots; and found that value to be $90,000. I.P. Homeowners appeals, alleging that the court erred in finding that the leases should not be terminated or forfeited, in establishing a value for the improvements if the leases were terminated, and in determining that if I.P. Homeowners were granted a writ in the future, it would have to pay $90,000 for the improvements. As plain error, we find that a notice to leave the premises was not served upon the Morrows as required by Neb. Rev. Stat. § 25-21,221 (Reissue 1995), that such notice is necessary for a forcible entry and detainer action to be maintained, and that in this action, the only relief the court could have granted, if the evidence justified the same, was a writ of restitution and a judgment for costs. Accordingly, we affirm in part, and in part reverse and remand with directions for the court to vacate the orders which sound in equity along with the value determinations and to dismiss the petition for forcible entry and detainer.

## BACKGROUND

From the record, we glean that I.P. Homeowners is a Nebraska corporation that owns "Iske Place," a residential area in Bellevue, Nebraska, where an undisclosed number of people had built their homes on lots rented from the former owner. (See *I. P. Homeowners v. Radtke*, 5 Neb. App. 271, 558 N.W.2d 582 (1997), for the action where I.P. Homeowners won the right to purchase Iske Place.) Those homeowners formed I.P. Homeowners to purchase and hold title to all of the tracts, and then I.P. Homeowners leased the particular lots to the various owners of the established residences. The record shows that there are approximately 11 stockholders in the corporation. The record contains no information about the terms and provisions that govern the corporation or of the rules it established to regulate Iske Place. Curt Morrow is a shareholder of I.P. Homeowners and at one time was an officer

and director of the corporation. The only documentation of the details of the arrangement between the parties is a copy of the leases from I.P. Homeowners to the Morrows and some notices that purport to inform residents of rules that I.P. Homeowners would be enforcing.

On October 2, 1995, I.P. Homeowners and the Morrows entered into two identical lease agreements, one for Lot 19 and one for Lot 22 at Iske Place. One of them was signed by Curt Morrow, and one of them was signed by Linda Morrow. Each lease provided for a term of 10 years, beginning on February 1, 1996. The leases contained provisions that the lessees were required to pay annual rent, that the lessees could construct buildings or other personal property upon the leasehold, and that the lessees could remove such improvements when the leases were terminated. The leases also provided:

3. Lessee shall obey all laws and not disturb other tenants. Roadway may be used but not blocked. . . .

4. COVENANTS - Lessee covenants that he shall peacefully and quietly have and hold, the above described leasehold for the agreed upon term and pay the agreed upon rental.

. . . .

6. RENTERS INSURANCE . . . Lessee shall keep in full force and [e]ffect renters insurance covering liability in an amount not less th[a]n $300,000.00. Naming I.P. Homeowners as an additional insured. Upon request by [I.P. Homeowners], lessee shall submit verification to [I.P. Homeowners] of the existence of said insurance coverage yearly.

. . . .

9. DEFAULT - If any default is made in the . . . performance of or compliance with any term or condition hereof, the Lease at the option of [I.P. Homeowners] shall terminate and be forfeited upon 30 day written notice to lessee. Upon termination of the lease if all conditions of the lease have been complied with, and the rent paid, the lessee shall within 30 days make arrangements with [I.P. Homeowners] to remove all buildings and personal property belonging to lessee from said leasehold.

On July 23, 2001, I.P. Homeowners filed a petition entitled "Petition for Forcible Entry and Detainer and Replevin." Since the replevin part of the action is not an issue in this appeal, we shall omit summary of pleadings and other matters relating to the replevin part of the suit.

The petition alleged that the Morrows had failed to obey the rules and regulations of I.P. Homeowners, that I.P. Homeowners caused 30-day notices of lease termination to be served upon the Morrows, and that the Morrows continued to occupy the premises in default of the lease agreements. The petition prayed for an order granting I.P. Homeowners a writ of restitution and reimbursement for the costs it incurred in this proceeding.

There is oral testimony of action taken by I.P. Homeowners' board of directors to remind all residents that the speed limit is 10 m.p.h. in the area and that it would be enforced and to notify them that repeated violations of this limit will result in the initiation of lease termination procedures. Ultimately, the board determined that the Morrows' leases should be terminated. A 30-day notice of lease termination for each lot was served upon the Morrows by the sheriff's office on May 30, 2001. The notices state that the leases were being terminated due to (1) continued disturbance of the peace of other tenants, (2) failure to obey the rules and regulations of I.P. Homeowners, and (3) failure to provide insurance coverage pursuant of the leases.

At trial, the evidence of whether the Morrows were peaceable and quiet, disturbed other tenants, obeyed all laws, drove at excessive speeds, blocked the roadway, and maintained the insurance required was much in dispute. Since a resolution of the disputed facts is not necessary to a resolution of this appeal, we shall not summarize that evidence. The only admitted evidence on the value of the improvements the Morrows placed on the lots they leased was copies of the Sarpy County Treasurer's records which show the appraisement of these improvements for tax purposes, which evidence was apparently produced by the judge. The record shows that the judge introduced this evidence on his own motion, but without objection from the parties. Specifically, this evidence purports to be uncertified photographs and information from the treasurer's records and shows that the assessed

value of the improvements on one lot was $20,913 and on the other was $20,877.

On November 21, 2001, immediately following the trial, the judge entered a temporary order enjoining the Morrows from letting their daughter's dog run loose in Iske Park, disturbing the peace of other residents, and violating parking rules and set the matter for further hearing on January 22, 2002. A further hearing was held on the latter date, and evidence was introduced at that time. The evidence related to whether the Morrows were or were not violating the temporary order, and it was mainly established that their daughter's dog was accidentally allowed to escape from the house on one occasion and that they spent an hour trying to catch it. The Morrows also attempted to offer appraisal reports on the value of their houses, but objections to this attempt were sustained.

On January 23, 2002, the court entered its final order. In it, the court found that the land is owned by I.P. Homeowners, which leases out the land, and that the homes and buildings are owned by the renters, who are taxed by Sarpy County on the value of the improvements upon the land. The court's order states that it treated the case as an equity action rather than a landlord-tenant case "because of the peculiar relationship of the parties." It found that the evidence did not support the allegations that Curt Morrow started a fire causing danger to other tenants and that the Morrows failed to provide insurance coverage. The court determined that the evidence supported a finding that the Morrows parked their vehicles improperly, that the Morrows' daughter drove at an excessive speed, and that Curt Morrow was argumentative and disturbed the peace of other tenants.

The court denied the petition for forcible entry and detainer. The court's order then states:

> The parties were further advised, however, that if an action were brought against [the Morrows] because of violations of the terms of the leases, [and] if [relief were] granted, [I.P. Homeowners] would have to pay [the Morrows] fair value for their improvements.
>
> Upon review of the evidence, the Court finds . . . fair value for the improvements on Lot 19 Iske Park (16705

Iske [P]lace) to be $30,000.00 and Lot 22 Iske Park (16719 Iske Park) to be $60,000.00.

As part of its order, the court permanently enjoined the Morrows from letting dogs run loose in Iske Park, disturbing the peace of other residents, and violating parking rules and speed limits, and taxed costs to the Morrows.

## ASSIGNMENTS OF ERROR

I.P. Homeowners alleges that the trial court erred (1) in failing to find that the leases had been breached and should be forfeited, (2) in failing to terminate the leases in accordance with their provisions, (3) in finding that I.P. Homeowners must pay for the improvements placed on the land by the Morrows in the event of lease termination, and (4) in establishing a value for the improvements at the time of the trial in the event that the leases are subsequently terminated.

It appears as though the Morrows intended to file a cross-appeal assigning that the court erred (1) in accepting testimony from noncredible witnesses and (2) in failing to dismiss the case. The Morrows' brief states on the cover that it is the reply brief of the appellees, and these assignments of error appear on page 3 of the brief. The brief does not even contain a statement of facts section, it does not contain a separate section for the cross-appeal, and the arguments related to the purported cross-appeal are intermingled with other arguments.

■ Neb. Ct. R. of Prac. 9D(4) (rev. 2000) provides:

Where the brief of appellee presents a cross-appeal, it shall be noted on the cover of the brief and it shall be set forth in a separate division of the brief. This division shall be headed "Brief on Cross-Appeal" and shall be prepared in the same manner and under the same rules as the brief of appellant.

The Nebraska Supreme Court recently reiterated that appellate courts have repeatedly held that a cross-appeal must be properly designated under rule 9D(4) if affirmative relief is to be obtained by an appellee. *Gourley v. Nebraska Methodist Health Sys.*, 265 Neb. 918, 663 N.W.2d 43 (2003). We therefore decline to consider the purported cross-appeal.

## STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *O'Connor v. Kaufman*, 260 Neb. 219, 616 N.W.2d 301 (2000); *McCombs Realty v. Western Auto Supply Co.*, 10 Neb. App. 962, 641 N.W.2d 77 (2002).

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *McCombs Realty, supra.*

## ANALYSIS

The leases provided that "[i]f any default is made in the . . . performance of or compliance with any term or condition hereof, the Lease at the option of [I.P. Homeowners] shall terminate and be forfeited upon 30 day written notice to lessee." I.P. Homeowners argues that the evidence is overwhelming that the Morrows breached the terms of the leases in several respects. I.P. Homeowners argues that the trial court found that the Morrows had breached some of the conditions of the leases and that therefore, I.P. Homeowners was entitled to a writ of restitution. For the reasons explained below, we do not reach these issues.

Where a forcible entry and detainer action is not brought under the Uniform Residential Landlord and Tenant Act, the action is controlled by Neb. Rev. Stat. §§ 25-21,219 to 25-21,235 (Reissue 1995 & Cum. Supp. 2002). The Uniform Residential Landlord and Tenant Act does not apply to the case at hand because the leases are for a term of more than 5 years. Neb. Rev. Stat. § 76-1408(8) (Reissue 1996). We realize that since § 25-21,219 was amended in 1984 to allow a forcible entry and detainer action in district court, see 1984 Neb. Laws, L.B. 1113, the possession of real estate may be recovered in district courts in two forms of action with very similar allegations: forcible entry and detainer, and ejectment. See Neb. Rev. Stat. §§ 25-2124 through 25-2136 (Reissue 1995 & Cum. Supp. 2002) (provides for recovery of possession of real estate in ejectment action). During the trial, the judge termed the action an ejectment action a few times but near the end started calling it a forcible entry and detainer action. We conclude that the pleadings along with the actions of the court and the parties leave no doubt that this action is one of forcible entry and detainer.

█ The statutory proceedings for a forcible entry and detainer action were designed to provide a speedy and summary method for obtaining possession of premises for those rightfully entitled thereto after notice. *Watson v. Arcadian Foods, Inc.*, 233 Neb. 622, 447 N.W.2d 477 (1989); *Blachford v. Frenzer*, 44 Neb. 829, 62 N.W. 1101 (1895). "Generally given the fact that a summary proceeding to recover possession of real property is a creature of statute, there must be strict adherence to the statutory requirements . . . ." 35A Am. Jur. 2d *Forcible Entry and Detainer* § 3 at 1038 (2001).

█ I.P. Homeowners did not allege and did not prove that it gave the Morrows notice to leave the premises. In the absence of plain error, an appellate court will disregard issues not raised. Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *In re Estate of Soule*, 248 Neb. 878, 540 N.W.2d 118 (1995); *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994). We conclude that this is an appeal where some of the plain errors must be recognized and that because of them, the trial court's decision must be reversed.

█ Section 25-21,221 provides:

> It shall be the duty of the party, desiring to commence an action under sections 25-21,219 to 25-21,235, to notify the adverse party to leave the premises for the possession of which the action is about to be brought. This notice shall be served at least three days before commencing the action by leaving a written copy with such adverse party . . . .

This notice has frequently been called a "notice to quit," and as indicated below, there is discussion in other cases which indicates that such a notice to quit is jurisdictional. Since the results would be the same whether service of the notice to quit is jurisdictional or merely a necessary condition, we will not decide the fine point of whether under modern practice the notice is jurisdictional or simply necessary to obtain a writ of restitution.

"The statutory notice is not for the purpose of terminating the tenancy but is a necessary preliminary to bringing the action and

is jurisdictional." 2 Edward Cole Fisher, Practice and Procedure in Courts of Limited Jurisdiction in Nebraska § 398 at 736 (1950) (citing *Krull v. Rose*, 88 Neb. 655, 130 N.W. 272 (1911), and *Connell v. Chambers*, 22 Neb. 302, 34 N.W. 636 (1887)). In *Krull*, a tenant held over at the termination of the tenancy and only the 3-day notice was held to be necessary, an additional notice of termination being superfluous. The *Krull* court stated, "This three days' notice is a part of the proceeding to obtain possession when a tenant is wrongfully holding over after his term has expired." *Id.* at 656, 130 N.W. at 272-73. In *Connell*, following the appeal procedure provided at that time, the forcible entry and detainer action had been commenced in the county court. The plaintiff won in that court, the case was retried de novo in the district court, and the plaintiff obtained the same verdict in the district court. Upon appeal to the Nebraska Supreme Court, the notice to quit was held inadequate and the Supreme Court reversed and remanded. In the more recent case of *Sage v. Shaul*, 159 Neb. 543, 67 N.W.2d 921 (1955), the defendant had been notified that a tenancy at will was terminated. The court said, "A subsequent serving of a statutory notice to quit is the only condition precedent to the bringing of a forcible detainer action." *Id.* at 546, 67 N.W.2d at 923.

We find such an error in the case at hand in that the record contains no evidence that a notice to quit as required by § 25-21,221 was served. The above authority establishes that by statute as well as long practice, a notice to leave or quit is necessary in a forcible entry and detainer action. We notice the lack of pleadings and evidence on this point under the plain error doctrine.

I.P. Homeowners did serve 30-day notices of lease termination upon the Morrows, but the 3-day notice to quit is a separate and distinct requirement. The 30-day notices of lease termination were served upon the Morrows on May 30, 2001, but the notices merely stated that effective 30 days from their service, the leases would be terminated. The notices did not direct the Morrows to leave the premises. By the notices' terms, they could not have functioned as both terminations of tenancy and notices to quit. We therefore conclude that the trial court was not in error in denying the writ of restitution.

The relief the trial court did grant creates a separate and distinct problem which we likewise notice under the plain error doctrine. Doubtless in an attempt to keep the peace in Iske Place, the court temporarily and then permanently enjoined the Morrows from doing three different types of act which it determined to be in violation of the terms of the leases. The traditional view of what could be accomplished in forcible entry and detainer actions is indicated by the following quote:

> The only finding of fact that can be lawfully made in the trial of a forcible detainer case is whether or not the defendant therein is guilty of forcibly detaining the premises, and the only judgment that can be pronounced in such case is that the plaintiff have restitution of the premises sued for, or that the plaintiff's action be dismissed and that the defendant go hence without day.

*Stover v. Hazelbaker*, 42 Neb. 393, 60 N.W. 597, 598 (1894).

A close reading of §§ 25-21,219 and 25-21,220 shows that the rules have changed, but little. Section 25-21,219 has a title of "Forcible entry and detainer; jurisdiction; exception." That statute provides the district court and the county court with jurisdiction over complaints of unlawful and forcible entry, the detention of lands and tenements, or the unlawful holding of the same by force. That statute also authorizes inquiry into rent owing, damages, and judgment therefor accordingly. Section 25-21,220 is entitled "Forcible entry and detainer; against whom proceedings may be had; provisions not exclusive." That statute mentions tenants holding over their terms, those not paying rent that is due, judgment debtors holding over after a judicial sale, and settlers or occupiers without color of title. Sections 25-21,219 to 25-21,235 do not provide for any other relief.

The relief the trial court did grant was equitable relief. There are no allegations to support equity jurisdiction. "A suit in equity will not lie when the plaintiff has a plain and adequate remedy at law." *Ganser v. County of Lancaster*, 215 Neb. 313, 317, 338 N.W.2d 609, 611 (1983). " 'An adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.' " *Id.* "[E]quitable remedies are generally not available where a statute provides an adequate remedy

at law." *Clayton v. Nebraska Dept. of Motor Vehicles*, 247 Neb. 49, 55, 524 N.W.2d 562, 567 (1994). We cannot read I.P. Homeowners' petition as anything but a petition for forcible entry and detainer. However, if some strained interpretation of it could find a prayer for equitable relief, we understand the rule to be that a plaintiff cannot plead alternate theories of recovery, one in equity and one in law. See *Southwest Trinity Constr. v. St. Paul Fire & Marine*, 243 Neb. 55, 497 N.W.2d 366 (1993). "[W]here a statute provides an adequate remedy at law, equity will not entertain jurisdiction, and the statutory remedy must be exhausted before equity may be resorted to." *Koperski v. Husker Dodge, Inc.*, 208 Neb. 29, 38, 302 N.W.2d 655, 660 (1981).

 In addition, I.P. Homeowners did not request in its petition or raise any issue concerning injunctive relief. As a general rule, it has been held that a judgment must respond to the pleadings. A judgment based upon an issue not pled is a nullity. *Alexander v. School Dist. No. 17*, 197 Neb. 251, 248 N.W.2d 335 (1976). Older authority gives this rule more clearly:

> "It is also a general principle of law that a court cannot set itself in motion, nor has it power to decide questions except as presented by the parties in their pleadings. Anything that is decided beyond them is *coram non judice* and void. Therefore where a court enters a judgment or awards relief beyond the prayer of the complaint or the scope of its allegations the excessive relief is not merely irregular but is void for want of jurisdiction, and is open to collateral attack." 15 R. C. L. [*Judgments* §] 328 [at 854 (1917)].

*Branz v. Hylton*, 130 Neb. 385, 387-88, 265 N.W. 16, 17 (1936). Those parts of the order in this case which purport to grant equitable relief are therefore void and must be vacated.

 The decree further provided, "The parties were further advised, however, that if an action were brought against [the Morrows] because of violations of the terms of the leases, [and] if [relief were] granted, [I.P. Homeowners] would have to pay [the Morrows] fair value for their improvements." The court then went on to find the value of the improvements for each lot.

As a general rule, the decisions, opinions, or findings of a court . . . do not constitute a judgment or decree, but

merely form the basis on which the judgment is subsequently to be rendered. . . .

. . . .

A court's determination that is not part of the judgment has no legal effect. . . . A judicial announcement of what judgment might be rendered under specified circumstances yet to occur is not a judgment.

49 C.J.S. *Judgments* § 4 at 54-55 (1997).

In *Parker v. Parker*, 10 Neb. App. 658, 636 N.W.2d 385 (2001), this court quoted part of the above quote and found that an order which was apparently intended to be a final order but which contained nothing but findings was not a final order. In *State v. Carney*, 220 Neb. 906, 374 N.W.2d 59 (1985), the Nebraska Supreme Court said that after granting a motion which determined that the defendant was entitled to acquittal, the trial court should have entered judgment dismissing the action. See, also, Neb. Rev. Stat. § 25-1301(1) (Cum. Supp. 2002) (stating, "A judgment is the final determination of the rights of the parties in an action"). The findings of value in the court's order in this case are therefore ineffective, but their existence without comment could cause unnecessary confusion. Therefore, they should be vacated. A determination of what the results of a future legal proceeding should be is obviously ineffective and is likely to be a cause of needless litigation.

■ We also point out that that part of the order which provides, "[I]f an action were brought against [the Morrows] because of violations of the terms of the leases, [and] if [relief were] granted, [I.P. Homeowners] would have to pay [the Morrows] fair value for their improvements" is a conditional order. A conditional order is void. *County of Sherman v. Evans*, 247 Neb. 288, 526 N.W.2d 232 (1995); *Harvey Oaks Dental v. Peter Letterese & Assocs.*, 7 Neb. App. 403, 583 N.W.2d 72 (1998). This last quoted part of the decree must be vacated to avoid confusion in possible future litigation.

## CONCLUSION

We conclude that I.P. Homeowners failed to give the required 3-day notice to quit and that such notice is necessary to obtaining an order of restitution in a forcible entry and detainer action.

We therefore affirm the trial court's denial of the writ of restitution, reverse the remainder of its decision, and remand the action with directions to dismiss the petition for forcible entry and detainer and to vacate the injunctions, the findings of value, and other findings purporting to control future proceedings.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.