**F I L E D**

UNITED STATES COURT OF APPEALS

**JUL 8 2004**

FOR THE TENTH CIRCUIT

MID-AMERICA AG NETWORK,
INCORPORATED, a Kansas
corporation,

       Plaintiff-Counter-
       Defendant-Appellee,

v.

MONKEY ISLAND DEVELOPMENT
AUTHORITY, an Oklahoma public
trust,

       Defendant-Counter-
       Claimant-Appellant.

No. 03-5138
(D.C. No. 02-CV-105-EA)
(N.D. Okla.)

## ORDER AND JUDGMENT *

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **BRISCOE**, Circuit Judge.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Monkey Island Development Authority (MIDA) appeals the district court's judgment in favor of Appellee Mid-America AG Network, Incorporated (Mid-America). Mid-America filed the underlying lawsuit against MIDA seeking a declaratory judgment and injunctive relief to enforce a contract between the parties involving a shopping center lease. [1] The district court exercised diversity jurisdiction under 28 U.S.C. § 1332, and, after a bench trial, entered a judgment in Mid-America's favor. We have appellate jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND

On December 1, 1997, the parties entered into a lease agreement whereby Mid-America would construct a strip shopping mall on land owned by MIDA near an existing airport. Mid-America was to pay annual rent of $3,750 to MIDA, and, in exchange, Mid-America had the right to rents paid by tenants of the shopping mall for the lease's thirty-year primary term. The lease required Mid-America to construct a sewage disposal system to serve the facility. Mid-America constructed the strip mall and installed a sewage lagoon system near the property.

---

[1]    MIDA filed counterclaims against Mid-America, which the district court denied. MIDA has not appealed that ruling, so we do not consider it.

The airport property was operated by Paul Staten, who sent invoices to Mid-America for the annual lease payments. Mr. Staten did business as the Grand Lake Regional Airport. Mid-America made the lease payments without incident until the payment for 2001 was made. Mid-America's 2001 payment was made payable to Grand Lake Regional Airport, as was its 1998 payment. The payments for 1999 and 2000 were payable to MIDA. MIDA asserts that Mid-America defaulted the lease by failing to make the 2001 payment.

In February 2002, Mid-America filed the underlying action seeking declaratory and injunctive relief to prevent MIDA from invalidating the lease. MIDA counterclaimed for cancellation of the lease and various money damages. Mid-America did not make the lease payment on the due date of September 1, 2002. MIDA mailed a notice of default on October 24, 2002. Mid-America then requested permission to pay the 2002 lease payment into the court registry, which the district court denied on November 20. Mid-America mailed the lease payment to MIDA on December 3; it crossed in the mail with MIDA's notice of termination of the lease. MIDA deposited the 2002 lease payment into its account.

The district court held a two-day bench trial on the issues of whether the lease payments for 2001 and 2002 were made as the lease required, and whether the sewage lagoon complied with the lease. Based on its extensive findings of

-3-

fact and conclusions of law, the court entered judgment in favor of Mid-America on its claims for relief and against MIDA on its counterclaims.

## FEDERAL JURISDICTION

MIDA challenges the federal court's diversity jurisdiction on the ground that the amount in controversy does not exceed $75,000, as required by 28 U.S.C. § 1332(a). [2] It asserts that the amount in controversy is $3,750, which represents the rental payment for 2002 that was not yet paid when suit was filed, and that the shopping center is MIDA's property. Mid-America responds that it spent approximately $1,000,000 to construct the shopping center and that it is entitled to collect in excess of $800,000 in future rents under the lease.

We review de novo the district court's determination that the amount in controversy was sufficient to invoke federal court jurisdiction. *Watson v. Blankinship*, 20 F.3d 383, 386 (10th Cir. 1994). If the amount in controversy claimed by the plaintiff is apparently made in good faith, the jurisdictional minimum is met, unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938). In actions such as this one in which the plaintiff seeks declaratory or injunctive relief, "the amount in controversy is

---

[2]    There is no dispute that the parties are diverse.

measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). "To determine the amount in controversy, we look to the pecuniary effect an adverse declaration will have on either party to the lawsuit." *City of Moore v. Atchison, Topeka, & Santa Fe Ry. Co.*, 699 F.2d 507, 509 (10th Cir. 1983).

In response to MIDA's jurisdictional challenge, Mid-America filed an affidavit stating that if the lease were terminated, it would "suffer a loss in the range of $812,000 to $1.2 million." Aplee. Supp. App. at 15. The affidavit is uncontroverted, and the district court properly considered it. *See Okla. Retail Grocers Ass'n v. Wal-Mart Stores, Inc.*, 605 F.2d 1155, 1159-60 (10th Cir. 1979). We conclude that the future payments anticipated under the lease met the jurisdictional minimum and that the district court's exercise of jurisdiction was correct.

MIDA'S CLAIMS

MIDA argues on appeal that the district court erred in ruling that Mid-America did not forfeit its rights under the lease by failing to make the annual rental payments for 2001 and 2002. It also maintains that the district court erred in rejecting its claim that the sewage lagoon violated the lease.

ANALYSIS

Standards of Review

"In an appeal from a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Keys Youth Servs., Inc. v. City of Olathe*, 248 F.3d 1267, 1274 (10th Cir. 2001). In this case based on diversity jurisdiction, we must reach the same legal conclusions the state's highest court would reach. *Blanke v. Alexander*, 152 F.3d 1224, 1228 (10th Cir. 1998). There is no dispute here that Oklahoma state law controls.

2001 Lease Payment

MIDA argues that Mid-America did not make the 2001 lease payment. It contends that the district court erred in holding that Grand Lake Regional Airport was authorized to act as its agent. MIDA claims only that the contract does not specify that any entity except Mr. Staten, personally, was named as MIDA's agent. MIDA does not dispute the district court's findings that (1) Mr. Staten was MIDA's agent for collecting the lease payments from Mid-America, among other duties; (2) Mid-America's 1998 lease payment was payable to Grand Lake Regional Airport; (3) MIDA formally terminated Mr. Staten as its agent in October 2001, after Mid-America's lease payment had been made; (4) Mid-America was not informed prior to October 2001 that Mr. Staten had been terminated as MIDA's agent; (5) Mr. Staten accounted to MIDA for the

-6-

2001 payment; and (6) MIDA was aware that Mr. Staten was issuing invoices on Grand Lake Regional Airport letterhead to Mid-America for the annual lease payments, and acquiesced in that practice.

Under Oklahoma law, Mid-America was entitled to rely on Mr. Staten's status as MIDA's agent in making the 2001 lease payment to his company, Grand Lake Regional Airport. *See, e.g., Home State Bank of Hobart v. Sullins*, 178 P.2d 86, 88 (Okla. 1947) ("Where an agency apparently covering the subject matter in question is established or admitted, the principal has the burden of proving any special limitations of authority and notice to, or knowledge by, the adverse party of such limitations.") (citation omitted); *see also Bank of Okla., N.A. v. Briscoe*, 911 P.2d 311, 317 (Okla. Ct. App. 1995) (holding that in agency relationship, where principal has acquiesced in agent's unauthorized conduct, he may be estopped from denying liability for agent's acts). Accordingly, we will not disturb the district court's ruling.

<u>Sewage Lagoon</u>

MIDA claims that the sewage lagoon Mid-America constructed in 1999 did not comply with the requirements set out in the lease agreement. The district court found that MIDA did not register any objection to the sewage lagoon system until January 2002, and in fact, had been enthusiastic about the sewage lagoon's design at the time it was constructed. Further, MIDA was fully aware of the

system's location and design at the time it was designed and built. The district court held (1) notice of a change in the lease was not required because the sewage lagoon was not a substantial change; (2) even if it was a substantial change, MIDA had approved it; (3) the parties acquiesced in the sewage lagoon's construction; (4) the lease should be interpreted to conform to the parties' conduct; (5) the lease was altered by the executed oral agreement to construct the sewage lagoon; and (6) by consenting to the construction and failing to object for more than two years, MIDA waived any right to claim the sewage lagoon breached the lease.

On appeal, MIDA argues only that the sewage lagoon cannot be maintained on its property under the theories of laches, estoppel, waiver, adverse possession, or prescriptive easement. It does not challenge the district court's other rulings. Issues not argued to the appellate court are deemed waived. *Ruiz v. McDonnell*, 299 F.3d 1173, 1182 n.4 (10th Cir. 2002), *cert. denied*, 538 U.S. 999 (2003). Accordingly, because MIDA has waived objection to the district court's alternate holdings, we affirm on those grounds.

<u>2002 Lease Payment</u>

Finally, we address MIDA's claim that the district court erred in denying termination of the lease for Mid-America's failure to make the 2002 payment in accordance with the lease terms. As related above, the district court denied

Mid-America's request to pay the 2002 installment into the court registry. Thereafter, the payment was sent to MIDA, but after the due date and after MIDA had sent notice of default. Mid-America's payment and MIDA's notice of termination crossed in the mail. MIDA cashed the check. The district court held that the deadline for payment was equitably tolled during the time Mid-America's motion was pending, payment was made soon after the motion was denied, and MIDA was not prejudiced by the equitable tolling.

MIDA argues that the district court erred in invoking the doctrine of equitable tolling under these circumstances. It maintains that on the date the court denied its motion, Mid-America still had eight days before the termination period expired, but it did not make payment within that time.

We review a district court's decision to apply equitable tolling for an abuse of discretion. *United States v. Clymore*, 245 F.3d 1195, 1198 (10th Cir. 2001). Oklahoma law abhors a forfeiture. *City of Tulsa, ex rel. Tulsa Airport Auth. v. Air Tulsa, Inc.*, 851 P.2d 519, 523 (Okla. 1992). A contract clause providing for forfeiture upon non-payment is considered as security for payment; equity may avoid forfeiture by granting adequate compensation. *Whitehurst v. Ratliff*, 181 P.2d 545, 548-49 (Okla. 1947). Here, terminating the long-term lease would afford MIDA a windfall by forfeiting Mid-America's million-dollar construction for late payment of the relatively small sum of $3,750. *Cf. McCombs Realty, Inc.*

*v. W. Auto Supply Co.*, 641 N.W.2d 77, 81-82 (Neb. Ct. App. 2002) (invoking equitable principles to deny lease forfeiture where lessee acted in good faith, payment was tendered promptly after lessee realized payment had not been made, and termination would result in forfeiture of $1 million investment for failure to pay $100 annual payment). Under these circumstances, we find no abuse of discretion in the district court's decision to equitably toll the deadline for Mid-America to pay the 2002 lease payment.

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge